[Crim. No. 11256. Fourth Dist., Div. One. July 15, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
STEVEN DANIEL JACK MATTHEWS, Defendant and Appellant.

Counsel

Appellate Defenders, Inc., under appointment by the Court of Appeal, George C. Boisseau and Handy Horiye for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Jay M. Bloom and Robert M. Foster, Deputy Attorneys General, for Plaintiff and Respondent.

Opinion

**BROWN (Gerald), P. J.**—In a bloody barroom brawl in Brawley, Steven Matthews shot and killed a man and injured three others. At the end of a month-long jury trial he was convicted of second degree murder, having used a firearm within the meaning of Penal Code sections 12022.5 and 1203.06, subdivision (a)(1), assault intending to murder, with the gun use as above, plus inflicting great bodily injury (Pen. Code, § 12022.7); and two attempted murders, with gun use as above.

Matthews was enroute from San Bernardino to San Diego. Jack Peniska and his girlfriend Becky Sue King were with him. They stopped in Brawley for Peniska to retrieve his belongings, decided to spend the

night there, went to a bar and had some beer. While dancing with King, Peniska offended the patrons by letting down his pants, exposing his bottom. Although he pulled them up, the damage was done. The atmosphere suggested they would be welcomed elsewhere and they left. Others followed them out but when the three appeared to be leaving in a car, the pained patrons returned to the bar. The car stopped in the parking lot. Matthews and Peniska talked with some people and decided to return to the bar to see if anyone wanted trouble. Matthews took a pistol with him. They confronted the patrons, started a fight and Matthews, when knocked down, pulled out the gun and sprayed shots around, killing one and wounding others. At pistol point Matthews ordered the release of Peniska and the two of them fled to the waiting King in the car and drove off. They returned to San Bernardino where Matthews was arrested three days later.

■ Matthews claims the People reversibly erred in improperly questioning him about his postarrest silence to the police, violating his Fifth Amendment right to remain silent as explained to him when he was *Mirandized* (*Doyle* v. *Ohio* (1976) 426 U.S. 610, 620 [49 L.Ed.2d 91, 99, 96 S.Ct. 2240]; *United States* v. *Hale* (1975) 422 U.S. 171, 180 [45 L.Ed.2d 99, 106-107, 95 S.Ct. 2133]; *People* v. *Galloway* (1979) 100 Cal.App.3d 551 [160 Cal.Rptr. 914]). However, Matthews himself introduced the subject on direct examination when he took the stand. Having explained that he had been cut by a knife during the fracas he said he did not tell the authorities about it upon being booked, for the reason that the injury, not serious, appeared to be healing and he did not need any medical attention. Having opened up the subject, quite rightly the People were permitted to cross-examine Matthews about it. Matthews handled himself very well, explaining he needed no medical attention. He added what most people know, "When you are arrested you are read your rights and the first thing you are read is you have the right to remain silent. And the second thing is anything you say can and will be used against you in a court of law. And I chose to remain silent and discuss anything that I had to say or show to my attorney concerning this case." This was a logical and sensible explanation of Matthews' actions upon arrest, not to discuss the case with the authorities, not to tell why he felt justified in his conduct. The questioning and comments of the People, following Matthews' invitation to explore the subject, were proper (*Jenkins* v. *Anderson* (1980) 447 U.S. 231 [65 L.Ed.2d 86, 100 S.Ct. 2124]. Moreover, no objection was made to the comments during argument (*People* v. *Green* (1980) 27 Cal.3d 1, 34 [164 Cal.Rptr. 1, 609 P.2d 468]).

■ The trial court had no *sua sponte* duty to instruct the jury that an honest but unreasonable belief it was necessary to defend oneself from imminent peril to life negates malice aforethought so that the chargeable offense is reduced to manslaughter. The court instructed on the lesser included offense of voluntary manslaughter, but did not cover the "unreasonable belief" principle. Nor was it required to do so without a request in this case which was tried many months before our Supreme Court spoke upon the subject in *People* v. *Flannel* (1979) 25 Cal.3d 668, 681, 683 [160 Cal.Rptr. 84, 603 P.2d 1].

In its brief filed March 21, 1980, the People agree with Matthews that he should be resentenced in the light of *People* v. *Harvey* (1979) 25 Cal.3d 754, 761 [159 Cal.Rptr. 696, 602 P.2d 396], considering also *People* v. *Benton* (1979) 100 Cal.App.3d 92, 102, [161 Cal.Rptr. 12] and *People* v. *Roberson* (1978) 81 Cal.App.3d 890, 894-895 [146 Cal. Rptr. 777].

However, a new law effective May 29, 1980, amending Penal Code section 1170.1, prompted this court to inquire of counsel as to its effect on *Harvey*. The law is intended to clarify the Legislature's original intent on sentencing under Penal Code section 667.5, subdivision (c)(8) for violent felonies where a gun is used. While we agree with the People in its interpretation of Penal Code section 667.5, subdivision (c)(8), as we did originally when *Harvey* was before us, nevertheless under *Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937], we are compelled to and respectfully abide by the Supreme Court decision in *People* v. *Harvey, supra,* 25 Cal.3d 754, 761.

The judgment of conviction is affirmed, with remand only for resentencing in harmony with *Harvey, Benton* and *Roberson*.

Cologne, J., and Staniforth, J., concurred.

The petitions of both parties for a hearing by the Supreme Court were denied September 24, 1980.