[Crim. No. 10608. Third Dist. Feb. 20, 1981.]

THE PEOPLE, Plaintiff and Respondent, v.
RUDY SAVALA, Defendant and Appellant.

**44**

---

COUNSEL

Paul H. Greisen, under appointment by the Court of Appeal, and Greisen & Stewart for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Robert D. Marshall and Garrett Beaumont, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**CARR, J.**—Defendant appeals from a judgment sentencing him to state prison for a total unstayed term of twelve and one-third years after a jury found him guilty of four counts of robbery; that in each robbery defendant personally used a firearm (Pen. Code, §§ 211, 12022.5.) and guilty of assault upon a police officer engaged in the performance of his duties. (Pen. Code, § 245, subd. (b).) The trial court found him guilty of being a convicted felon in the possession of a firearm after he waived a jury trial on that charge. Prior to trial defendant admitted one prior felony conviction.

Defendant makes numerous contentions: (1) the in-court identification by eyewitnesses should have been suppressed because of an unduly suggestive confrontation at the scene of his arrest; (2) that the charges of robbery should have been severed for separate trials; (3) the trial court erred in refusing to grant a mistrial when a codefendant changed his plea to guilty pursuant to a plea bargain after jury selection but before evidence was taken; (4) the trial court coerced an original codefendant into invoking his privilege against self-incrimination; (5) the prosecutor suppressed evidence; and (6) the trial court erred in calculating his sentence by adding an enhancement for the use of a firearm in the commission of each of the four robberies for which consecutive sentences were imposed. We conclude defendant's sole, meritorious contention is the improper enhancement of his sentence.

The facts disclose that on the evening of March 15, 1979, at about 11:30 p.m., Cheryle Esparza was working at Sambo's restaurant on 16th Street in Sacramento. A man of Mexican descent was standing near the cash register looking "uptight," when she asked if she could help him; he opened his shirt, showed her a pistol, and told her to give him the money from the cash register. He took the money handed to him, said thank you, and left. She saw the robber leave in a large car, which was either yellow or gold.

On the evening of March 16, 1979, Emelia Mejia was working at Jimboy's Taco on 29th Street in Sacramento. A man of Mexican descent approached her, showed her a pistol, and demanded money. She gave him about $50 and he left.

In the early morning hours of March 18, 1979, Tanya Inez Kumenkov was working as a cashier at the Pancake Parade on 30th Street in Sacramento. A man of Mexican descent walked up to the cash register, opened his shirt to show a pistol, and demanded money. She had difficulty understanding the robber, and said, "I beg your pardon," at which time the robber took his gun, pointed it at her and again demanded money. During this robbery another person was standing by the door. Three witnesses heard this person address the robber as "Rudy." After getting the money, both men left.

At 11 o'clock on the evening of March 18, 1979, Dorothy Ballah was working at Denny's Restaurant on 15th and Broadway, in Sacramento. A man who appeared to be of Mexican descent entered, stood in front of the cash register, pulled open his jacket to reveal a pistol, and demanded money. Instead of opening the register, she backed down the counter. James Perry, the assistant manager, saw Ballah backing away and saw the robber. He opened the cash register, and the robber took between $100 and $125, mostly in ones and fives, and a roll of coins from Bank of America before leaving. Ballah in the meantime called the police.

Perry and two other Denny's employees saw the robber with a passenger driving away in a yellow car. They observed the car turn onto 15th Street and go east on Broadway. A few minutes later, the car passed Denny's going west on Broadway. While the suspect vehicle was still in sight, Sacramento City Police Officers Randall Twilling and Kent Thorpe arrived at Denny's, having received a call that an armed robbery had taken place about one minute before. Several people pointed out the yellow Dodge Polara as the robber's car. The officers followed the vehicle and activated their red lights and siren. The yellow vehicle accelerated.

The officers, joined by other police units, gave chase. When the vehicle went out of control and made an 180-degree turn, the pursuing police cars stopped in front of it. Officers Twilling and Thorpe got out of their unit and positioned themselves behind the vehicle doors to effect a felony vehicle stop. After Twilling and Thorpe yelled, "police

officers" and told the driver and occupant to "freeze," the suspect vehicle accelerated and headed to the right side of the squad car, then swerved and struck the door, pinning Officer Thorpe against the car body. It then again reversed directions and sped off. Though severely injured, Officer Thorpe was able to radio a description of the vehicle.

Several minutes later, after yet another chase involving several additional police units and a California Highway Patrol helicopter, the suspect and his companion were apprehended and arrested. The suspect was defendant.

When Officer Hoffman, the arresting officer, gave defendant a pat-down, he found a bundle of money protruding from defendant's jacket pocket. It consisted of one $20 bill, four $5 bills, and twenty-nine $1 bills.

Officer McHale, dispatched to the scene of the vehicle stop to investigate the suspect vehicle, found a rolled package of nickels from Bank of America on the front seat, a .38 caliber revolver with some bullets wrapped in a white tee shirt under the passenger side of the vehicle, and seven $5 bills crumpled together and jammed between the seat and the passenger door.

Ballah and Perry were brought to the scene of the arrest shortly after the arrest and identified defendant as the Denny's robber. They likewise identified defendant at trial.

After defendant's arrest a photographic lineup of ten photographs, including one of defendant, was composed and shown to witnesses to the robberies at Jimboy's, Pancake Parade, and Sambo's. The victim of the Sambo's robbery picked out defendant as the robber. She also identified defendant as the Sambo's robber at trial. Two witnesses to the Jimboy's robbery identified defendant from the photographic lineup and at trial. Four witnesses to the robbery of the Pancake Parade identified defendant from the photographic lineup and at trial.

An information was filed against defendant and one Daniel Moreno. A negotiated plea was entered by defendant, conditioned upon the right of the court to withdraw its acceptance of such plea after receipt of a probation report. When the court received and considered the probation report, it did withdraw its acceptance of the plea bargain and defendant's plea of not guilty was reinstated.

At trial, defendant and the People stipulated to the charge of being a convicted felony being tried before the court, a jury was selected, and out of the presence of the jury, defendant admitted one prior conviction, the other prior having previously been struck.

After the jury had been selected and sworn, Daniel Moreno advised the court that he had negotiated a plea bargain whereby he would plead guilty to one count of being an accessory (Pen. Code, § 32), and the district attorney would dismiss the remaining charges. The court conditionally accepted the plea, subject to consideration of the probation report. Defendant then moved for a mistrial, asserting that since Moreno had been present during the jury selection, the jurors might assume a disposition had been made as to him. The trial court denied the motion with an assurance that an admonition would be given on the absence at trial of Moreno.

When the prosecution rested its case, defendant advised the court, out of the presence of the jury, that he intended to call Moreno to testify. Moreno was called and sworn but asserted his privilege against self-incrimination. As the acceptance of the earlier plea bargain had been conditional, the court honored the claim of privilege. The defense then rested without calling any witnesses, having informed the court one potential witness could not be located and had not been interviewed. The witness allegedly had told police she could identify the robber of Sambo's.

I

Defendant contends the in-court identification of him as the robber of Denny's by Ballah and Perry[1] should have been suppressed because of improper field identification procedures which were held in the absence of counsel and were impermissibly suggestive, creating a substantial likelihood of irreparable misidentification at trial.

The propriety of in-field identifications of a suspect without the presence of counsel has been repeatedly upheld. (*People* v. *Craig* (1978) 86 Cal.App.3d 905, 913 [150 Cal.Rptr. 676]; *In re Richard W.* (1979) 91 Cal.App.3d 960, 970 [155 Cal.Rptr. 11]; *People* v. *Hall* (1979) 95

---

[1] Prior to trial, defendant unsuccessfully moved to suppress identification by these witnesses.

Cal.App.3d 299, 309 [157 Cal.Rptr. 107], and cases cited therein.[2] We affirm those holdings.

■ When the defendant asserts pretrial identification was unnecessarily suggestive, he must show it gave rise to a very substantial likelihood of irreparable misidentification. (*People v. Craig, supra*, 86 Cal.App.3d 905; *In re Richard W., supra*, 91 Cal.App.3d 960.) In making this determination, the trial court should consider certain factors, i.e., the opportunity of the witness to view the criminal at the time of the crime; the witness' degree of attention; the accuracy of the witness' prior description of the criminal; the level of uncertainty demonstrated by the witness at the confrontation; and the length of time between the crime and the confrontation. (*People v. Hall, supra*, 95 Cal.3d 299.)

In *In re Richard W., supra*, 91 Cal.App.3d 960, a case factually similar to the case at bench, the trial court rejected a contention that exhibition of the appellant in a police car in handcuffs with police officers nearly was impermissibly suggestive. The minor, apprehended at the scene, was identified minutes after apprehension. The court, while noting single person showups should not be used absent compelling circumstances, observed in-field identifications in close proximity in time and place to the scene of the crime are favored in the law.

■ The trial court's finding that the challenged pretrial identification procedure was proper is binding on this court if supported by substantial evidence. (*People v. Greene* (1973) 34 Cal.App.3d 622, 649 [110 Cal.Rptr. 160].) In the instant case, the trial court's finding is fully supported by substantial evidence.

Both of the witnesses who identified defendant in court had excellent opportunities to observe defendant during the robbery of Denny's, which took place in a well-lighted public restaurant in the immediate presence of the witnesses, who were the victims. The witness' prior descriptions of defendant were accurate, and they were certain of their indentifications at the time of confrontation. The field identification

---

[2]Defendant apparently contends his right to counsel at a showup is assured by *United States v. Wade* (1967) 388 U.S. 218 [18 L.Ed.2d 1149, 87 S.Ct. 1926]; *Gilbert v. California* (1967) 388 U.S. 263 [18 L.Ed.2d 1178, 87 S.Ct. 1951]; *Stovall v. Denno* (1967) 388 U.S. 293 [18 L.Ed.2d 1199, 87 S.Ct. 1967]. However, these cases are not applicable to identification procedures prior to initiation of criminal proceedings. (See *People v. Chojnacky* (1973) 8 Cal.3d 759, 765 [106 Cal.Rptr. 106, 505 P.2d 530]; *People v. Johnson* (1978) 85 Cal.App.3d 684, 690 [149 Cal.Rptr. 661].)

took place in close physical proximity to the scene of the crime, a matter of some 15 or 16 blocks, the distance defendant managed to flee prior to his apprehension. The identification took place in close temporal proximity to the robbery, the testimony placing it between 15 and 45 minutes thereafter. The police officers conducting the viewing provided proper lighting to decrease the chance of misidentification. Defendant has failed to direct us to any evidence supporting his contention the field identification gave rise to a substantial likelihood of misidentification.

Moreover, the trial identification testimony of the witnesses was based on observations made during the robbery, independent of the challenged showup. (See *People* v. *Craig, supra,* 86 Cal.App.3d at p. 914.)

The trial court properly denied the motion to suppress.

## II

Prior to trial defendant moved to sever the four robbery counts for separate trials. On appeal he asserts error in the denial of this motion. We find no error.

Penal Code section 954 provides, in part: "An accusatory pleading may charge two or more...offenses connected together in their commission,....or two or more different offenses of the same class of crimes or offenses...provided, that the court in which a case is triable, in the interests of justice and for good cause shown, may in its discretion order that the different offenses...be tried separately ...."

Defendant was charged with four robberies, offenses of the same class. He was further charged with being a convicted felon in possession of a firearm, a charge connected with his use of the firearm during the robberies. Finally, defendant was charged with assaulting a police officer during his attempt to escape arrest after the last robbery; this offense was thus connected in its commission with that robbery. The offenses meet the test of joinder, and the denial of the motion to sever may be disturbed only upon a showing of an abuse of discretion by the trial court. (*People* v. *Matson* (1974) 13 Cal.3d 35, 39 [117 Cal.Rptr. 664, 528 P.2d 752].)

In commenting upon Penal Code section 954, the Supreme Court stated: "Because a severance motion lies within the discretion of the trial judge, denial of the motion will be disturbed on appeal only for abuse of discretion resulting in substantial prejudice to the defendant. [Citation omitted.] However, as Mr. Witkin has noted, '[w]here the consolidation meets the test of joinder,' as it does here, 'the difficulty of showing prejudice from denial of severance is so great that the courts almost invariably reject the claim of abuse of discretion.' (Witkin, Cal. Criminal Procedure, p. 288, quoted with approval in *People v. Rhoden* (1972) 6 Cal.3d 519, 525, fn. 2 [99 Cal.Rptr. 751, 492 P.2d 1143].)" (*People v. Matson, supra*, 13 Cal.3d at p. 39.)

Defendant argues the charges of robbery of the Sambo's Restaurant, Jimboy's Tacos, and the Pancake Parade should have been severed from the charges of the robbery of Denny's Restaurant because of the similarity of the crimes and the resultant danger of the jury finding him guilty of all or some of the crimes simply because they were similar.

The robberies were remarkably similar. The four robberies occurred on four consecutive nights, at approximately the same hour, in eating establishments of a similar class, each within a short distance of the others. In each instance the robber entered, approached the cashier, opened his shirt or jacket to reveal a pistol, demanded money, and left upon receiving money. Under such circumstances, if the trial court had granted the motion to sever, the People properly could have introduced evidence of the severed offenses to prove modus operandi, common scheme and identity. (Evid. Code, § 1101, subd. (b); *People v. Guerrero* (1976) 16 Cal.3d 719, 724 [129 Cal.Rptr. 166, 548 P.2d 366]; *People v. Kelley* (1967) 66 Cal.2d 232, 239 [57 Cal.Rptr. 363, 424 P.2d 947].) The severance of the charges would have served no purpose; we find no abuse of discretion by the trial court.

### III

■ Defendant next contends the trial court erred in refusing to grant a mistrial when his codefendant, Daniel Moreno, accepted a plea bargain after selection of the jury but before presentation of any evidence. A motion for mistrial is addressed to the sound discretion of the trial court. (*People v. Romero* (1977) 68 Cal.App.3d 543, 548 [137 Cal.Rptr. 675]; *People v. Slocum* (1975) 52 Cal.App.3d 867, 885 [125 Cal.Rptr. 442].) We find no abuse of discretion in the denial of the motion for a mistrial.

Upon motion of the prosecutor, a trial court is empowered by Penal Code section 1099 at any time before the defendants have gone into their defense to discharge any defendant so he may be a witness for the People. In a trial of two or more defendants, the trial court must, if the evidence is insufficient to put a particular defendant on his defense, order that defendant discharged before the evidence is closed so he may be a witness for a codefendant. (Pen. Code, § 1100.)

Case law discloses no error in permitting a defendant to change his plea and testify against a codefendant during the People's case. (See *People* v. *Terry* (1962) 57 Cal.2d 538 [21 Cal.Rptr. 185, 370 P.2d 985]; *People* v. *Robinson* (1960) 184 Cal.App.2d 69, 78 [7 Cal.Rptr. 202].)

The facts before us are far less likely to cause prejudice to defendant than the situations contemplated by Penal Code sections 1099 and 1100, and that involved in *People* v. *Terry, supra,* 57 Cal.2d 538. The codefendant herein changed his plea outside the presence of the jury after jury selection, but before the reading of the information, the opening arguments, or the presentation of any evidence. He did not testify against defendant. The defendant made no showing of any possibility of prejudice and submitted the matter without relevant argument. The trial court properly admonished the jury about the absence of Moreno. We find no prejudice.

## IV

Defendant also contends the trial court coerced Moreno into refusing to testify. During trial a plea bargain was made pursuant to which Moreno would plead guilty to one count of being an accessory in the Denny's robbery (Pen. Code, § 32) and the remaining charges against him would be dismissed. This was conditionally accepted by the trial court, subject to receipt and consideration of the probation report. Defendant called Moreno to testify and asked if he were the driver of the getaway vehicle after the Denny's robbery. Moreno asserted his privilege against self-incrimination.[3] Because of the conditional acceptance of the plea bargain, such statements could still tend to incriminate Moreno; the court therefore allowed the claim of privilege.

---

[3]The trial court was advised in advance of defendant's intention to question Moreno and Moreno's intention, on the advice of counsel, to exercise his privilege against self-incrimination. This evidence was taken outside the presence of the jury.

Defendant now asserts that Moreno "...was told by his attorney that the judge had told him to advise co-defendant...that if he were to take the stand and testify on behalf of [defendant] that since the deal of the three years he had promised DANIEL MORENO would not be complete until after the probation report, that he would then in fact renig [*sic*] on the deal and the promise of three years. Also that if he did so, the court then would give him additional time."

We note this issue is presented to this court at the specific behest of defendant personally. We note further that the record is barren of any factual support for this allegation of judicial misconduct.

Moreno's plea bargain included *no* sentence recommendation. The trial court retained the power to set an appropriate sentence, including a grant of probation, upon consideration of the probation report. In addition to being advised of and waiving his constitutional rights, at the time of taking the plea, Moreno was advised the maximum sentence for a violation of Penal Code section 32, to which he pled guilty, was three years. This is the sole reference to a three-year term. The plea was conditionally accepted and Moreno was advised that upon receipt and consideration of the probation report, the court could reject that bargain and Moreno would be permitted to reinstate his not guilty plea. When Moreno was called to testify, he was still in jeopardy for the charged offenses; he was entitled to assert the privilege against self-incrimination and the trial court properly recognized the assertion of privilege. Nothing in the record remotely suggests any threat or coercion by the trial court.

## V

A further contention pursued at the special request of defendant personally is that the prosecution suppressed evidence. Defendant contends Priscilla Tracy, a waitress at Sambo's on the night of that robbery, could have positively identified the real robber had she been called to testify. The prosecution is alleged to have suppressed evidence in failing to call Tracy to testify.

Defense counsel informed the court that he had attempted since April (the case was tried in September) to contact the witness both in person and by telephone but was unable to do so; that he did not know whether, after interviewing her, she would be used as a witness. Defendant stated he desired to have her testify because she had said that she

could positively identify the robber of Sambo's and later on would not admit it to the court, and he wanted to know why she would not admit it to the court, and "[b]ecause if she could identify the robber, she couldn't have identified me."[4] Nowhere in the record does it appear that the prosecution either failed to fully provide defendant's counsel with the information concerning the potential witness or that it contributed in any way to her unavailability. The claim of suppression of evidence is totally without merit.

If indeed the potential witness could have provided exculpatory evidence and trial counsel's efforts to contact her were not sufficient to meet the test of a reasonably competent attorney, then defendant's contention is better made in the context of an attack on the competency of trial counsel. (See *People* v. *Pope* (1979) 23 Cal.3d 412, 425 [152 Cal.Rptr. 732, 590 P.2d 859].) The record, however, fails to establish if counsel's efforts were insufficient or the failure to interview the potential witness withdrew a potentially meritorious defense. In such circumstances any relief, if appropriate, should be sought by writ of habeas corpus. (*Id.*, at p. 426.)

VI

Defendant was convicted of four counts of robbery (Pen. Code, § 211), with special findings that he personally used a firearm in committing each of the robberies (Pen. Code, § 12022.5), one count of assault upon a police officer (Pen. Code, § 245, subd. (b)), one count of being a convicted felon in possession of a firearm (Pen. Code, § 12021), and he admitted one prior felony conviction. (Pen. Code, § 667.5, subd. (b).) The court stayed the sentence for being a convicted felon in possession of a firearm and ordered the sentences for the remaining counts be served consecutive to each other. The middle term of three years for one count of robbery was selected as the base term. To this was added two years for the personal use of a firearm and one year for the prior prison sentence. In computing the consecutive sentences the court added one and one-third years for the assault, and five years for the three consecutive robbery sentences, each enhanced by the firearm use. This five years represents one-third of the middle term for each of the three robberies for a total of three years, plus one-third of the three separate two-year enhancements for the personal use of a firearm during each of

---

[4]The source of this information is not indicated in the record; this is simply defendant's uncorroborated statement in open court.

the robberies for a total of two years for the additional enhancements. ██ Defendant asserts error in the consecutive enhancements under Penal Code section 12022.5, relying on *People* v. *Harvey* (1979) 25 Cal.3d 754 [159 Cal.Rptr. 696, 602 P.2d 396].

In *Harvey, supra*, the Supreme Court was confronted with what it characterized as a close and subtle question of statutory construction. In resolving an apparent inconsistency between Penal Code section 1170.1, subdivision (a), and section 667.5, subdivision (c),[5] the court construed the underlying legislative intent to preclude enhancement for an offense if the offense is not specifically listed in section 667.5, subdivision (c). The offense of robbery with firearm use is not specifically listed in the latter section; the Supreme Court concluded the trial court erred in imposing an additional enhancement for each of the consecutively sentenced robbery offenses.

In obvious response to *Harvey, supra*, 25 Cal.3d 754, the Legislature enacted Assembly Bill No. 2123 (Stats. 1980, ch. 132) (hereinafter the Act), which was signed into law on May 28, 1980, as an urgency statute which became effective May 29, 1980. The self-described intent of the Act is to "...clarify and reemphasize what has been the legislative intent since July 1, 1977." (*Id.*, § 1, subd. (c).)[6]

---

[5]Section 1170.1 relates to the calculation of prison terms to run consecutively. Subdivision (a) thereof formerly provided in pertinent part: "...the aggregate term of imprisonment...shall be the sum of the principal term, [and] the subordinate term .... The principal term shall consist of the greatest term of imprisonment imposed by the court for any of the crimes, including any enhancements imposed pursuant to Section 12022, 12022.3, 12022.5, 12022.6, 12022.7 or 12022.8. The subordinate term for each consecutive offense shall consist of one-third of the middle term...for each other felony conviction for which a consecutive term of imprisonment is imposed, and *shall exclude any enhancements when the consecutive offense is not listed in subdivision (c) of Section 667.5, but shall include one-third of any enhancement imposed pursuant to Section 12022, 12022.5, or 12022.7 when the consecutive offense is listed in subdivision (c) of Section 667.5.*" (Italics added.)

Section 667.5, subdivision (c) enumerates the violent felonies for which consecutive enhancements shall be imposed as: "(1) Murder or voluntary manslaughter. (2) Mayhem. (3) Rape as defined in subdivision 2 of Section 261. (4) Sodomy by force, violence, duress, menace, or threat of great bodily harm. (5) Oral copulation by force, violence, duress, menace, or threat of great bodily harm. (6) Lewd acts on a child under 14...; (7) Any felony punishable by death or imprisonment in the state prison for life. (8) Any other felony in which the defendant inflicts great bodily injury on any person other than an accomplice..., *or any felony in which the defendant uses a firearm which use has been charged and proved as provided in Section 12022.5.*" (Italics added.)

[6]The Act provides: "The Legislature hereby finds and declares as follows:

"(a) The commission of 'violent felonies' as defined in subdivision (c) of Section

Section 2 of the Act amends Penal Code section 1170.1 to explicitly incorporate paragraph (8) of subdivision (c) of section 667.5, so that enhancement is properly applied to any felony in which a firearm has been charged and proved as provided in Penal Code section 12022.5. This amendment states with clarity that enhancement under 1170.1 subdivision (a) is not limited to the specific felonies listed by name in subdivision (c) of section 667.5.[7]

Viewing the *Harvey* decision in light of the Act's purported clarification of legislative intent, the broad question before us is what affect, if any, should we as an intermediate court of appeal give to the Act, given the chronology of operative events in the case at bench.[8]

Three other appellate courts have addressed the general issue now before us. Each case has adhered to the *Harvey* decision, albeit for different reasons. In *People* v. *Matthews* (1980) 108 Cal.App.3d 793 [167 Cal.Rptr. 8], Division One of the Fourth District Court of Appeal based its adherence to *Harvey* upon the rule of stare decisis. Division Two of the same appellate district, in *People* v. *Cuevas* (1980) 111 Cal.App.3d 189, at pages 199-200 [168 Cal.Rptr. 519] held: "Chief Justice Marshall, writing in *Marbury* v. *Madison* (1803) 5 U.S. 137, 177 [2 L.Ed. 60, 73], set out clearly and simply the role of the judiciary in American jurisprudence: 'It is emphatically the province and duty of the judicial department to say what the law is. Those who apply the rule to particular cases, must of necessity expound and interpret that rule.' The California courts have been equally forthright in expressing the courts' role in the legal process: 'The ultimate interpretation of a statute is an exercise of the judicial power.' [Citations.] And our Supreme Court has succinctly stated the part which it, as the highest

---

667.5 of the Penal Code represents a substantial threat to the welfare of the people of the State of California.

"(b) The legislative intent in enacting subdivision (c) of Section 667.5 of the Penal Code was to identify these 'violent felonies' and to single them out for special consideration in several aspects of the sentencing process.

"(c) This act is intended to clarify and reemphasize what has been the legislative intent since July 1, 1977."

[7]Section 2 of the Act provides that when a defendant receives a consecutive sentence for a violent felony as defined in Penal Code section 667.5, subdivision (c), ". . . including those offenses described in paragraph (8) of subdivision (c) of Section 667.5," his consecutive sentence is one-third of the middle term for the offense, plus one-third of any enhancements imposed pursuant to section 12022, 12022.5, or 12022.7.

[8]In this case all of the following events occurred subsequent to enactment of Penal Code section 1170.1, but prior to the Supreme Court ruling in *Harvey*: (1) commission of the offense; (2) conviction; (3) sentencing.

court of the state, must play in this process: '[I]t is the duty of this court, when such a question of law is properly presented, to state the true meaning of the statute *finally and conclusively....*' (*Bodinson Mfg. Co. v. California E. Com., supra,* 17 Cal.2d 321, 326 [109 P.2d 935]; italics added.) [¶] In line with the well-established rule that statutory interpretation is a judicial function, the courts have consistently held that 'declaratory or defining statutes are to be upheld...as an exercise of the legislative power to enact a law for the future.' [Citations.] Thus, the Legislature 'may not revise the operation of an existing law in the form of an amendatory statute to affect past transactions.' ...Further, our courts have concluded that subsequent legislation passed to clarify a statute 'merely supplies an indication of legislative purpose which may be considered together with other factors in arriving at the true intent existing at the time the statute was enacted.' (*In re Marriage of Paddock* (1971) 18 Cal.App.3d 355, 360 [95 Cal.Rptr. 652]; *Stockton Sav. & Loan Bank v. Massanet, supra,* 18 Cal.2d 200, 204; *Flewelling v. Board of Trustees* (1960) 178 Cal.App.2d 168, 172 [2 Cal.Rptr. 891].)" Application of the Act to enhance retroactively was thus prohibited as an ex post facto law.

The Second Appellate District concurred that application of the subsequently enacted clarifying legislation would contravene the prohibition against ex post facto laws. (*People v. Fulton* (1980) 109 Cal.App.3d 777 [167 Cal.Rptr. 436].) The First Appellate District aligned itself with stare decisis as delineated by *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937]. (*People v. Harvey* (1980) 112 Cal.App.3d 132 [169 Cal.Rptr. 153]; the identity of names is coincidental.)

In *People v. Matthews, supra,* 108 Cal.App.3d at page 796, the court stated, without further elaboration, that, "[w]hile we agree with the People in its interpretation of Penal Code section 667.5, subdivision (c)(8), as we did originally when *Harvey* was before us, nevertheless under *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937], we are compelled to and respectfully abide by the Supreme Court decision in *People v. Harvey* ...." In *People v. Harvey, supra,* 112 Cal.App.3d at page 138, the court succinctly stated the problem: "This intermediate court of review thus finds itself directed by the Legislature to *affirm* Harvey's consecutive great bodily injury enhancement, and by the Supreme Court to set it aside. The unpleasant quandary, we think, is resolved by *Auto Equity Sales, Inc. v. Superior Court...*" (Italics in original.)

■ In *Auto Equity Sales, Inc.* v. *Superior Court, supra,* 57 Cal.2d 450, the Supreme Court stated that "[u]nder the doctrine of *stare decisis,* all tribunals exercising inferior jurisdiction are required to follow decisions of courts exercising superior jurisdiction. Otherwise, the doctrine of *stare decisis* makes no sense. The decisions of this court are binding upon and must be followed by all the state courts of California." (P. 455.)

The Supreme Court has also stated that "[t]he rule of *stare decisis* is not so imperative or inflexible as to preclude a departure therefrom in any case, but its application must be determined in each instance by the discretion of the court. Previous decisions should not be followed to the extent that error may be perpetuated and that wrong may result." (*County Los Angeles* v. *Faus* (1957) 48 Cal.2d 672, 679 [312 P.2d 680]; see also *People* v. *Hallner* (1954) 43 Cal.2d 715, 720 [277 P.2d 393].)

■ Because the result reached in *Harvey* was based upon the court's construction of legislative intent, and because the Legislature, by subsequent enactment has more than hinted that its intent has been judicially misconstrued, the question arises whether *Harvey*-situation cases present a circumstance permitting a departure from the rule of stare decisis.

Respondent has cited no case, nor are we aware of any California case in which an intermediate Court of Appeal properly departed from a prior and controlling holding of the state Supreme Court, although the Supreme Court has departed from a previous holding of its own. (See, e.g., *In re Tartar* (1959) 52 Cal.2d 250, 258 [339 P.2d 553]; *County of Los Angeles* v. *Faus, supra,* 48 Cal.2d at p. 679; *People* v. *Hallner, supra,* 43 Cal.2d at p. 720; *Porter* v. *Bakersfield & Kern Elec. Ry. Co.* (1950) 36 Cal.2d 582, 590 [225 P.2d 223].) Appellate courts have avoided the precedential confinement of stare decisis by determining that otherwise controlling language of a prior Supreme Court opinion was either dicta or otherwise distinguishable. (See, e.g., *Montandon* v. *Triangle Publications, Inc.* (1975) 45 Cal.App.3d 938, 950-951 [120 Cal.Rptr. 186, 84 A.L.R.3d 1234]; *People* v. *Gregg* (1970) 5 Cal.App.3d 502, 505-507 [85 Cal.Rptr. 273]; *Childers* v. *Childers* (1946) 74 Cal.App.2d 56, 61 [168 P.2d 218].) *Harvey,* however, admits to no such fine distinctions. It was the court's clear holding that "... properly construed, section 1170.1, subdivision (a), permits enhancement only for those *specific offenses* listed in section 667.5,

subdivision (c)." (*People* v. *Harvey, supra*, 25 Cal.3d at p. 761.) (Italics in original.)[9]

In *People* v. *Wilson* (1943) 59 Cal.App.2d 610 [139 P.2d 673], the Second District reluctantly concluded it was bound by the construction of legislative intent placed upon a particular statute by the Supreme Court in two prior decisions. Of particular interest is the concurring opinion in which the concurring justices emphatically dispute the Supreme Court's construction of the law at issue therein. (*Id.*, at pp. 612-613.)[10] Although strenuously protesting the Supreme Court's construction, and despite "...the logical construction placed upon the language..." by a recent legislative enactment, the concurring justices concluded that they were required to follow the controlling Supreme Court decisions, even if those decisions were "...at variance with a legislative intent clearly appearing in the language [of the statute]." (*People* v. *Wilson, supra*, at p. 612.)

When *Harvey, supra*, 25 Cal.3d 754, was decided, the Supreme Court did not have the benefit of the subsequent legislative declaration of purported intent. ■ A subsequent expression of the Legislature as to the intent of a prior statute is not binding on the court, though it may properly be used in determining the effect of a prior act. (See *California Emp. etc. Com.* v. *Payne* (1947) 31 Cal.2d 210, 213-214 [187 P.2d 702].) The Supreme Court may now deem it appropriate to

---

[9]It might be argued that we are not confronted with a stare decisis problem because this case is distinguishable from *Harvey* in the sense that the specific holding of *Harvey* was limited to judicial interpretation of legislative intent in the absence of an expressed legislative intent to the contrary. As the argument might go, the *Harvey* interpretation, by negative implication, was meant to be followed only so long as there was no clear expression of legislative intent to the contrary. Accordingly, that crucial circumstance having now changed, we would be free to consider the Act in rendering the opinion herein. However, we view the hypothetical argument as specious.

[10]"We concur, but we do so with misgiving and only because this court, by tradition and practice, is expected to follow the decisions of the Supreme Court, which in the situation here presented are *In re Haines*, 195 Cal. 605...and *In re Halcomb*, 21 Cal.2d 126.... By the action taken at its recent session in amending section 4532 of the Penal Code, the Legislature affirms the logical construction placed upon the language and the legislative history of the 1923 amendment to section 107 of the Penal Code (part of which is now section 4532) by Mr. Justice Traynor in his dissenting opinion, *supra*, [*In re Halcomb* (1942) 21 Cal.2d 126, 130-132] and which amendments gave rise to the decisions in the cases of *In re Haines* [195 Cal. 605] and *In re Halcomb, supra*, [21 Cal.2d 126] which require us, in practice, to affirm a judgment we regard as violative of natural justice and at variance with a legislative intent clearly appearing in the language of the 1923 statute and its legislative history." (Conc. opn. of Doran, J., and White, J.)

reconsider its prior interpretation of legislative intent, but we do not perceive it appropriate for an intermediate court of review to peremptorily assume this function of the Supreme Court.

Stare decisis is grounded upon the need for stability, consistency and predictability within the judiciary. Notwithstanding the doctrine of stare decisis, our decision herein is compelled by a further policy concern on the separation of powers. We recognize the fundamental importance of preserving autonomy between the three branches of government. (Cal. Const., art. III, § 3.) These boundaries are not sharply drawn. When a court is called upon to "construe" or to apply a statute to a circumstance apparently unanticipated by certain legislation, and when the Legislature responds to a judicial interpretation by "clarifying" its original intent, one branch necessarily touches upon the function of the other. The dynamic process is healthy, yet should be engaged in with restraint.

■ ■■■■ A decision by us to implement the legislative "clarification" contained in the Act necessarily includes adoption of a broad policy that intermediate appellate courts may depart from an otherwise controlling holding of the California Supreme Court whenever the Legislature declares its intent has been misconstrued.[11] There are two prospective unfortunate results from such a policy. First, the meaning and application of the law would be in a state of confusion, to the disadvantage of other courts and the public in general—the avoidance of which forms the basis of the stare decisis doctrine. Second, there could result an unnecessary obfuscation of the distinction between the judicial and the legislative functions of government. Such a course could well increase the potential for political intrusion into the judicial function.

---

[11]In the parlance of the dockside, our dissenting colleague has quite literally missed the boat. The issue is not, as implied by the citation of such cases as State Bd. of Equalization v. Board of Supervisors (1980) 105 Cal.App.3d 813 [164 Cal.Rptr. 739]; Los Angeles County Democratic Central Committee v. County of Los Angeles (1976) 61 Cal.App.3d 335 [132 Cal.Rptr. 43] Forde v. Cory (1977) 66 Cal.App.3d 434 [135 Cal.Rptr. 903], and the like, whether an intermediate appellate court, in the absence of controlling decisional law by a higher court, i.e., California Supreme Court, may give retroactive effect to a subsequent legislative clarification. Nor is the issue, as inferred by the citation of California Mfrs. Assn. v. Public Utilities Com. (1979) 24 Cal.3d 836 [157 Cal.Rptr. 676, 598 P.2d 836]; County of Nevada v. MacMillen (1974) 11 Cal.3d 662 [114 Cal.Rptr. 345, 522 P.2d 1345], and such, whether our state's highest judicial tribunal may consider as pertinent to the interpretation of a statute subsequent amendments which declare the original legislative intent. The plain issue is whether an intermediate appellate court may retroactively apply what purports to be a legislative declaration of intent of prior legislation, which has, in the intervening period, been in-

Likewise, the courts must avoid unnecessarily changing a law in the name of "construing" it. █ It is the sole task of the judiciary to determine legislative intent and to "...give full weight to that intent, whatever our personal views...." (*People* v. *Caudillo* (1978) 21 Cal.3d 562, 589 [146 Cal.Rptr. 859, 580 P.2d 274], conc. opn. of Bird, C. J.) Because the Supreme Court has already spoken with respect to the statute at issue, in a sense it represents the judiciary in the "dialogue" between the respective branches. The Supreme Court can better respond to the "clarification" of legislative intent. We conclude that for us to implement the Act, as to the defendant herein, would only compound an already problematic situation. █ For the above stated reasons we respectfully conform our decision herein with that of the Supreme Court in *People* v. *Harvey, supra*, 25 Cal.3d 754. Having so resolved the issue, we need not address the question of whether or not an ex post facto violation would result were we to apply the statute, as "clarified," to the defendant herein.

## VII

Defendant has communicated with this court to express his dissatisfaction with the representation on appeal by appointed counsel. Defendant sought certain orders, including an order discharging counsel and permitting him to proceed in propria persona. We denied the motions and herein note our reasons for doing so. (See *People* v. *Johnson* (1971) 18 Cal.App.3d 458, 465 [95 Cal.Rptr. 316, 96 Cal. Rptr. 695].)

Appointed counsel raised six issues on appeal. Two of the arguments were virtual verbatim repetition of the points and authorities submitted by trial counsel in support of pretrial motions. While this displeased defendant, we do not find it to be inadequate representation as the points and authorities of trial counsel competently raised the issues and supported the contentions with relevant authorities and factual arguments. Appellant counsel raised and briefed two issues on appeal which had not been previously briefed, and presented two arguments defendant requested him to present. As is our custom, we have considered the entire record to determine whether it raises issues not presented by

terpreted by our Supreme Court contrariwise to the subsequent clarification of legislative intent. To state the issue is to state the answer. The intermediate court must follow the controlling decisional law. To find otherwise invites chaos. We suggest our dissenting colleage misperceives his position and needs reminding that he is a member of an intermediate appellate court.

counsel; we have found none. Defendant has been adequately represented on appeal.

The cause is remanded to the trial court with directions to set aside the sentence and to resentence defendant in accordance with *People v. Harvey, supra,* 25 Cal.3d 754. In all other respects, the judgment of conviction is affirmed.

Blease, J., concurred.

**EVANS, Acting P. J.**—I concur in the affirmance of the conviction; however, I dissent from that portion of the majority opinion requiring the trial court to resentence the defendant in accord with *People v. Harvey* (1979) 25 Cal.3d 754 [159 Cal.Rptr. 696, 602 P.2d 396].

In *Harvey,* the Supreme Court ruled that Penal Code section 1170.1[1] permits enhancement of consecutive sentences only for the specific offenses listed in section 667.5 and not for "any felony in which the defendant uses a firearm." (*Id.,* at p. 760.) The court evidently misconstrued the original underlying legislative intent, as the Legislature immediately reacted by enacting Assembly Bill No. 2123 (Stats. 1980, ch. 132). Section 1 of that act provides: "The Legislature hereby finds and declares as follows:

"(a) The commission of 'violent felonies' as defined in subdivision (c) of Section 667.5 of the Penal Code represents a substantial threat to the welfare of the people of the State of California.

"(b) The legislative intent in enacting subdivision (c) of Section 667.5 of the Penal Code was to identify these 'violent felonies' and to single them out for special consideration in several aspects of the sentencing process.

"(c) *This act is intended to clarify and reemphasize what has been the legislative intent since July 1, 1977.*" (Italics ours.)

Section 2 of the act amends Penal Code section 1170.1 to provide that when a defendant receives a consecutive sentence for a violent felony as defined in Penal Code section 667.5, subdivision (c), ". . . including those offenses described in paragraph (8) of subdivision (c) of

---

[1]All further code references will be to the Penal Code.

Section 667.5," his consecutive sentence is one-third the middle term for the offense, plus one-third of any enhancements imposed pursuant to sections 12022, 12022.5, or 12022.7.

The amendment did not add new enhancement material to section 1170.1, but made clear the original and continuing intent of the Legislature. *Harvey* failed to find the original intent underlying the sections to be sufficiently clear.

The question arises whether this court may consider and give effect to the recent restatement of the original and present legislative intent underlying sections 1170.1 and 667.5, or whether as an intermediate Court of Appeal we are precluded from doing so under the doctrine of stare decisis. (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].) I conclude that we are not precluded by that doctrine from considering the clear intent of the Legislature as expressed in the original statutory enactment as reiterated in Assembly Bill No. 2123.

Under the doctrine of stare decisis all courts exercising inferior jurisdiction are required to follow decisions of courts exercising superior jurisdiction; it is not a lower court's function to attempt to overrule decisions of a higher court. (57 Cal.2d at p. 455.) Although there are no true "exceptions" to the rule of stare decisis, there are, however, exceptional situations in which a lower court is not required to blindly follow precedent which has only facial applicability.

The right and power of the Legislature to adopt legislation clarifying its intent is well established. (*California Mfrs. Assn.* v. *Public Utilities Com.* (1979) 24 Cal.3d 836 [157 Cal.Rptr. 676, 598 P.2d 836]; *People* v. *Superior Court (Douglass)* (1979) 24 Cal.3d 428 [155 Cal.Rptr. 704, 595 P.2d 139]; *County of Nevada* v. *MacMillen* (1974) 11 Cal.3d 662, 675 [114 Cal.Rptr. 345, 522 P.2d 1345]; *State Bd. of Equalization* v. *Board of Supervisors* (1980) 105 Cal.App.3d 813 [164 Cal.Rptr. 739]; *Los Angeles County Democratic Central Committee* v. *County of Los Angeles* (1976) 61 Cal.App.3d 335 [132 Cal.Rptr. 43]; *Burgess* v. *Board of Education* (1974) 41 Cal.App.3d 571, 581 [116 Cal.Rptr. 183]; *Friends of Lake Arrowhead* v. *Board of Supervisors* (1974) 38 Cal.App.3d 497 [113 Cal.Rptr. 539]; *People* v. *Rozell* (1963) 212 Cal.App.2d 875 [28 Cal.Rptr. 478]; *Flewelling* v. *Board of Trustees* (1960) 178 Cal.App.2d 168 [2 Cal.Rptr. 891].)

The question whether a later statement of legislative intent relating to previously enacted legislation, may supersede an erroneous intervening construction given that legislation by the Supreme Court, must be answered affirmatively. The rule of stare decisis is not so imperious or inflexible that it requires blind conformance in any case; rather its application must be determined by the circumstances in each case. Prior decisions should not be followed to the extent that obvious error may be perpetuated. (See *Los Angeles County Democratic Central Committee v. County of Los Angeles, supra,* 61 Cal.App.3d at p. 342; *County of Los Angeles v. Faus* (1957) 48 Cal.2d 672, 679 [312 P.2d 680].) The following from *Flewelling v. Board of Trustees, supra,* 178 Cal.App.2d at page 172, citing *Stockton Sav. & Loan Bank v. Massanet* (1941) 18 Cal.2d 200, 204 [114 P.2d 592], seems particularly apropos in this instance. "'This expression by the legislature concerning the existence of an ambiguity and the declaration of the intent of the 1933 act, although not binding upon this court in its construction of the 1933 act, is a factor that may properly be considered in correctly determining the meaning and effect of the sentence in question. [Citations.] That is not giving a retroactive effect to a statute, because the meaning of the statute to be interpreted has always been the same. The subsequent legislation interpreting the statute construed, does not change the meaning; it merely supplies an indication of the legislative intent which may be considered together with other factors in arriving at the true intent existing at the time the legislation was enacted.'"

As stated by the court in *Bates v. McHenry* (1932) 123 Cal.App. 81, at page 93 [10 P.2d 1038], "In view of the legislature's own interpretation as thus clearly set forth by its amending section 52, *supra,* there remains only one duty to be performed by the court, and that is to accept the interpretation as not only equitable but final."

In *People v. Harvey, supra,* the court did not find the statute ambiguous, but rather candidly observed that a literal reading of the statute would permit enhancement of consecutive sentences for the use of a firearm or infliction of great bodily injury in every case in which those factors were present. (25 Cal.3d at pp. 760-761.)[2]

---

[2]The majority, lemming-like, blindly adhere to the *Harvey* result and imply that only after the enactment of Assembly Bill No. 2123 was the legislative intent behind sections 1170.1 and 667.5 made known. A casual reading of *Harvey* discloses the majority of the Supreme Court acknowledged the contrary to be true. (See pp. 760-761.) "Although robbery with firearm use is not specifically mentioned by name in the list of 'violent felonies' under subdivision (c), this offense presumably

It is axiomatic that in the guise of clarification of intent, the Legislature may not effect an amendment of a statute. Similarly, a "clarification" of an ambiguous statute cannot be given an absurd effect simply because the Legislature states that an unmistakable change is merely a clarification and a statement of original intent. (*California Emp. etc. Com.* v. *Payne* (1947) 31 Cal.2d 210, 213-214 [187 P.2d 702].) It is because of such possibilities that courts are careful in their consideration of subsequent expressions of legislative intent.

In *Forde* v. *Cory* (1977) 66 Cal.App.3d 434 [135 Cal.Rptr. 903], this court considered the application of a provision of the Judges' Retirement Law. Under that law a judge could provide for survivor benefits for his spouse in the event he should die before reaching retirement eligibility, but if he chose to do so, his estate was not entitled to the normal lump sum death benefit. A similar law was enacted with respect to surviving children of a judge which was parallel to the surviving spouse provisions except that it omitted the provision that election to provide survivor benefits for children would be in lieu of the lump sum death benefit. After electing to provide survivor benefits for his children, and before becoming eligible to retire, a superior court judge died and his executor applied for both survivor benefits and a lump sum death benefit. In construing the provision this court relied, in part, upon a legislative enactment passed more than two years after the judge's death. We reasoned that the legislative expression of intent in the later statute was merely a clarification and not a change in the law. (66 Cal.App.3d at p. 438; see also *People* v. *Poggi* (1980) 107 Cal.App.3d 581, 587-588 [165 Cal.Rptr. 758].)

The subsequent expression of legislative intent related to the enactment of Penal Code section 1170.1, subdivision (a), and section 667.5 as articulated in Assembly Bill No. 2123 is not inconsistent with the

---

would be included within that category by reason of the broad language of paragraph (8)." The court did not indicate any lack of legislative intent to include the specific crime in the broad language of paragraph (8). The result of Assembly Bill No. 2123 was simply a statement by the Legislature that we meant what we said.

*Harvey* is another clear example of the frequent and willing intrusion by the majority of the present California Supreme Court into the legislative arena, in this instance, because of a paternalistic concern for the rights of the criminal. Where there is no doubt of the legislative intent, or if there be any that question is "close and subtle," an absence of judicial interference is in order. The majority opinion in this instance perpetuates the error.

As stated by Justice Clark in his dissent at page 762, "that the Legislature could have expressed itself with greater concision is no justification for refusing to give effect to what it did say."

prior enactments. I note, as did the majority opinion in *Harvey*, that a literal reading of the prior enactment would require the enhancement of consecutive sentences under the circumstances present here. Assembly Bill No. 2123 does not constitute a change in the statute; its terms compel the conclusion that it is merely a restatement of the original intent of the Legislature.

Under the circumstances I do not believe the clear legislative intent should be thwarted. Stare decisis should not be used as a means of avoiding distasteful legislative enactments. I would conclude that the defendant's sentence was correctly determined by the trial court, and the intervening decision in *Harvey* has been rendered inapplicable.

My conclusion does not impose an ex post facto punishment upon the defendant. At the time defendant committed his crimes, section 1170.1, subdivision (a), provided for the enhanced consecutive sentences for the use of a firearm in the commission of the crimes for which consecutive sentences were imposed. The subsequent statement of original legislative intent did not retroactively amend the statute to provide for a greater sentence. It merely advised the Supreme Court that the provisions of the original enactment were intended. (See *People v. Sobiek* (1973) 30 Cal.App.3d 458, 472-473 [106 Cal.Rptr. 519, 82 A.L.R.3d 804].) I believe that *People v. Fulton* (1980) 109 Cal.App.3d 777 [167 Cal.Rptr. 436], and *People v. Matthews* (1980) 108 Cal.App.3d 793 [167 Cal.Rptr. 8], were erroneously decided given the facts and circumstances underlying the decision in *People v. Harvey, supra*, 25 Cal.3d 754, and Assembly Bill No. 2123, and their results should not be followed.

In my view, the majority blindly follow *Harvey* and conclude the Legislature did not intend "to impose an enhancement for firearm use or great bodily injury in every case involving such factors."

I would affirm the judgment.

A petition for a rehearing was denied March 16, 1981. Evans, Acting P. J., was of the opinion that the petition should be granted. The petitions of both parties for a hearing by the Supreme Court were denied May 13 and May 15, 1981.