Filed 5/16/16  In re L.M. CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re L.M., a Person Coming Under the Juvenile Court Law. | B265159 <br><br> (Los Angeles County <br> Super. Ct. No. TJ22014) |
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> L.M., <br><br> Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Donna Quigley Groman, Judge.  Affirmed.

Holly Jackson, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald D. A. Engler, Chief Assistant Attorney General, Shawn McGahey Webb and Nathan Guttman, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Sixteen-year-old L.M. was declared a ward of the juvenile court and placed home on probation after the court sustained a petition filed pursuant to Welfare and Institutions Code section 602 alleging L.M. had committed a robbery and used a deadly or dangerous weapon during commission of the offense. On appeal L.M. contends the victim's in-court identification of him was impermissibly tainted by an unduly suggestive in-field show up on the day of the crime. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The Evidence at Trial*

In the early afternoon of May 21, 2015 L.M. and three or four other young men entered a liquor store in Long Beach. Erin Powell, the store's cashier/clerk, was uneasy because they were all wearing hooded sweatshirts on a warm day, continued to walk in and out of the store, and did not make eye contact with her. One of the individuals bought a lottery ticket; a second purchased a soda. L.M. and one of the other youths then approached Powell and asked her about Scratchers lottery tickets displayed on the counter. While about a foot away from Powell, L.M. pepper sprayed her in the face and eyes. His confederate grabbed the Scratchers display, and both individuals ran out of the store. Powell immediately called the police emergency number and reported the crime. A short while later paramedics arrived and flushed her eyes.

That same afternoon L.M. attempted to redeem the lottery tickets at a retail pharmacy in Compton. Because the tickets had been flagged as stolen, the store manager notified the Sheriff's Department. L.M. was detained as he left the store.

Powell was taken to the parking lot of the Compton store where the police had detained the suspect. Powell identified the person in custody (L.M.) as the individual who had used pepper spray. Powell, who had never seen L.M. prior to the robbery, again identified L.M. in court as the robber-assailant.

Following Powell's in-field identification, L.M. was arrested and taken to the police station. Seven scratched-off lottery tickets were found in his pocket. Prior to being questioned, L.M. was advised of his right to remain silent, to the presence of an

2

attorney, and, if indigent, to appointed counsel. (*Miranda v. Arizona* (1966) 384 U.S. 436 [86 S.Ct. 1602, 16 L.Ed.2d 694].) L.M. then admitted his participation in the robbery of the liquor store. He explained he had received a call from a friend who asked if he wanted to go and get money. L.M. said yes. His friend then arrived at his home in a car with two individuals L.M. did not know. After lunch, the four went to the liquor store in Long Beach. After a couple of trips in and out of the store, one of the individuals he did not know handed L.M. a canister of pepper spray and told L.M. to go inside with L.M.'s friend and steal the lottery tickets. L.M. told the investigating officer he committed the robbery because he needed money for his pregnant girlfriend.

L.M. did not testify and presented no evidence in his defense.

2. *The Single Person Field Showup*

Powell testified she "got a very good look" at her assailant before he sprayed her in the face and eyes. Before she identified him in the parking lot of the Compton pharmacy, she read and signed an admonition regarding in-field identification indicating she understood the person detained may or may not have been one of the robbers. Powell sat in the police car when she identified L.M., who was about 50 feet from her and was the only person being detained. During cross-examination Powell explained she made the identification because "I recognized his face." She acknowledged she did not recall what L.M. was wearing either at the liquor store or at the pharmacy in Compton and was not certain if he had facial hair (although she testified, "I believe he did").

3. *Argument, Jurisdiction Findings and Disposition*

At the court's request both counsel addressed whether pepper spray constitutes a dangerous weapon within the meaning of Penal Code section 12022, subdivision (b)(1). Defense counsel also argued Powell's identification of L.M. at the Compton pharmacy was "suspect" and that his confession was "simply unacceptable" because the investigating officer did not record it or maintain any notes from the interview.

The juvenile court sustained the petition, finding the People proved both the allegation that L.M. had committed second degree robbery and the allegation that he had

3

used a dangerous or deadly weapon during that offense to be true beyond a reasonable doubt. At a separate disposition hearing L.M. was ordered home on probation with 33 days of predisposition custody credit.

## DISCUSSION

L.M.'s sole contention on appeal is that the procedure by which Powell identified him outside the Compton pharmacy was so unduly suggestive that it deprived him of his right to due process. Although L.M.'s counsel alluded to this issue in his closing argument, no objection was made to Powell's in-court identification of L.M. as the perpetrator who had sprayed her or to her testimony that she had identified him during the in-field showup at the pharmacy parking lot. Accordingly, this claim has been forfeited. (*People v. Elliott* (2012) 53 Cal.4th 535, 585-586 ["[i]nsofar as defendant is asserting that unduly suggestive pretrial identification procedures tainted the courtroom identifications, so that the witnesses should not have been permitted to identify defendant in court, defendant has forfeited the claim by failing to make a timely objection or motion to exclude in the trial court"]; *People v. Medina* (1995) 11 Cal.4th 694, 753 [defendant's failure to object to identification procedure as "unduly suggestive and unreliable" "waived the point"].)

L.M.'s argument, in any event, lacks merit. Due process requires the exclusion of identification testimony "if the identification procedures used were unnecessarily suggestive" and "the resulting identification was also unreliable." (*People v. Yeoman* (2003) 31 Cal.4th 93, 123.) The defendant bears the burden of proving unfairness "as a demonstrable reality, not just speculation." (*People v. DeSantis* (1992) 2 Cal.4th 1198, 1222.) The threshold issue is whether the identification procedure was unduly suggestive and unnecessary. (*Ibid*.) If that initial question is answered in the affirmative, the court must then determine whether the identification itself was nevertheless reliable under the totality of the circumstances, taking into account such factors as the witness's opportunity to view the offender at the time of the crime, the witness's attentiveness, the accuracy of the witness's prior description, the level of certainty displayed at the identification and

4

the time elapsed between the crime and the identification.  (*People v. Ochoa* (1998) 19 Cal.4th 353, 412; *People v. Wash* (1993) 6 Cal.4th 215, 244.)

There is no indication Powell's identification of L.M. was based on unduly suggestive procedures.  A "'single person showup' is not inherently unfair," and consequently need not, absent unusual circumstances, be excluded from the presentation of evidence on due process grounds.  (*People v. Floyd* (1970) 1 Cal.3d 694, 714 [single person showup identification procedure conducted at the jail within several hours of a robbery did not violate due process], disapproved on another ground in *People v. Wheeler* (1978) 22 Cal.3d 258, 287, fn. 36; see *In re Richard W.* (1979) 91 Cal.App.3d 960, 969-970 [no due process violation when witness identified suspect shortly after burglary while suspect was handcuffed and seated in the back of a patrol car]; *People v. Savala* (1981) 116 Cal.App.3d 41, 49 [no due process violation where showup procedures were "factually similar" to those in *Richard W.*]; see also *People v. Contreras* (1993) 17 Cal.App.4th 813, 820 [police officer "[t]elling a witness suspects are in custody . . . is not impermissible" in context of identification procedure].)  In fact, "single-person show-ups *for purposes of in-field identifications* are encouraged, because the element of suggestiveness inherent in the procedure is offset by the reliability of an identification made while the events are fresh in the witness's mind, and because the interests of both the accused and law enforcement are best served by an immediate determination as to whether the correct person has been apprehended."  (*In re Carlos M.* (1990) 220 Cal.App.3d 372, 387.)

Here, Powell testified she "got a very good look" at her assailant when he was standing directly in front of her, only a short distance away, before he pepper sprayed her in the face.  The identification was done an hour or two after the incident, while it was still fresh in her mind; and she expressed no uncertainty when asserting she recognized L.M.'s face.  Although Powell's eyes were stung by the pepper spray, she testified she was able to see clearly after the paramedics assisted her.  Finally, Powell read and signed an admonition regarding the in-field identification and confirmed she understood the

5

person detained was not necessarily one of the robbers.  Although Powell could not recall exactly what the officer who transported her to Compton told her, she testified he did not say the detained suspect was one of the robbers.  Nothing about this process was unduly suggestive or establishes the resulting identification of L.M.—either outside the pharmacy or in court—was unreliable under the totality of the circumstances.

## DISPOSITION

The juvenile court's order is affirmed.


PERLUSS, P. J.


We concur:



ZELON, J.



SEGAL, J.



6