Johnson, J.
 

 This is an amicable suit, instituted to try the question, whether the defendant, lately collector of the port of Petersburg, was, after the 30th day of June 1800, entitled to retain three per centum on the amount of sums received by him after that time, upon bonds for duties taken between that period and the last day of March 1799. The claim of the defendant is founded upon the act of March 2d, 1799, “to establish the compensations of the officers employed in the collection of the duties,” &e. And the opposition on behalf of the government, is founded on the act of May 10th, 1800, supplementary to the one mentioned.
 

 The whole difficulty results from the vague signification of some of the expressions made use of in the latter act; which, so far as may be material to the present decision, are contained in the following extract from the 2d. section : “ That in lieu of the commissions heretofore allowed by law, there shall, from and after the 30th day of June next, be allowed to the collectors for the districts of Alexandria, Petersburg and Richmond, respectively, two and a half per centum on all moneys which shall be collected and received by .them,” “for and on account of the duties arising on goods, wares and merchandise imported into the United States, and on the tonnage of ships- 'and vessels.”
 

 On behalf of the United States, it is contended, that the rights of the collectors of duties, with regard to their compensation, are absolutely submitted to the will of congress ; that congress has uniformly increased or diminished that compensation, as circumstances suggested the expediency of
 
 *245
 
 sucb a measure, without regarding any supposed limitation of their right to .do *so, imposed by the claims of their officers ; that it has been the r* uniform policy of the government, to apportion the commission to the actual receipt of money ; and therefore, whatever may have been the proportion of their labor or responsibility, their right to compensation was not consummated, before the actual receipt of the duties, and the amount of their commission remained liable tobe increased or diminished, at the will of congress ; that in passing their act of May 10th, 1800, they had a right to give it a retroactive operation ; and the latter words of the 2d section, “ arising on goods imported,” will bear, and ought to receive, such a construction.
 

 At the same time, that I admit the correctness of the prefatory observations of the attorney-general,'my mind is led to adopt a conclusion unfavorable to the construction which he contends for. The rights of the collectors of duties, as to their compensation, are certainly submitted to the justice and honor of the country that employs them, until consummated by the actual receipt of the sums bonded in their respective offices ; but where an individual has performed certain services, under the influence of a prospect of a certain emolument, that confidence which it is the interest of every government to cherish in the minds of her citizens, a confidence which experience leaves no room to distrust in our own, would lead to a conclusion, that it could not have been the intention of the legislature, to defeat a reasonable expectation of her officer, suggested by her own laws. Unless, therefore, the words are too imperious to admit of a different construction, it will be gratifying to the court to be able to vindicate the justice of the government, by restricting the words of the law to a future operation.
 

 That it is the policy of the United States, in granting compensations to her revenue officers, to limit the consummation of their right to the actual receipts of money, is evident, from a view of all her acts on that subject. But it is observable, that every end of that policy is answered, in this case, because the claim of the defendant is founded upon the actual receipt of money *arising upon bonds taken while the compensation was at three per r* cent. His claim has no relation to the amount bonded, but to the *- amount actually received upon the bonds taken prior to the last act.
 

 Upon considering the question, therefore, upon the construction of the act, I confine myself to the single inquiry, how far the government has exercised its power, in reducing the compensation to the defendant, from, three to two and a half per cent. The words of the act, “ arising on goods imported,” although, in themselves, very indefinite in point of time, will receive a precise signification in this respect, by supplying the words “heretofore,” to give them a past, or “ hereafter,” to give them a future signification. If it be necessary, that the court should make an election between these words, in order to complete the sense, its choice will be immediately determined, by recurring to two well-known rules of construction, viz., that it ought to be consistent with the suggestions of natural justice, and that the words should be taken most strongly “
 
 contra proferentem”
 

 But there are other considerations which will lead to a conclusion, without supplying any supposed deficiency in the wording of the sentence. There is nothing, either in the terms made use of, or in the professed object of the law, necessarily retrospective; but the general intention of the act, as well as the signification of the word arising, both point to a future opera
 
 *246
 
 tion. Besides which, where it can be shown, that a government has once adopted a certain rule of justice for its conduct, it is fair to infer, that in legislating afterwards upon the same subject, it intended to pursue the same rule, unless the contrary shall be clearly expressed; and in the act of March 3d, 1797, which varies the compensation of the revenue officers in several particulars, that alteration is expressly restricted to take effect only with regard to future importations. I am of opinion, that the defendant shall have judgment.
 

 * Washington, J.
 

 The point submitted by the circuit court of Virginia to this court is, whether the defendant, as collector, was restricted to a commission of two and a half per cent, on any, or all of the moneys collected and received by him, after the 30th of June 1800, on account of bonds previously taken for duties arising on goods, &c., imported into the United States.
 

 The solution of this question must depend upon another: does the 2d section of the act of the 10th of May 1800, extend to duties which arose upon goods imported before, and received after, the 30th of June, in that year ? or is it to be restricted to duties arising on goods which should be imported after that period ?
 

 I am strongly inclined to the opinion, that every part of this section is future, and that a literal construction will render it entirely prospective upon the whole subject. The time at which the substitution of two and a half for three per cent, is to take place, as well as that of collection and receipt, are certainly future, and there is, I think, as little doubt, that those receipts can only apply to duties which should arise after the same period, the word arising being clearly future, in relation to the time specified in the section. The word “ imported,” though past, in relation to the duties which were to arise on the goods imported, may, nevertheless, be future, in relation to the period when the charge of commissions was to take effect, and I think it ought to be so construed in this case, because the duties arise either immediately upon the importation of the goods, or upon the performance of some acts which, in contemplation of law, are immediately to follow the importation.
 

 This construction is, I think, considerably strengthened by a reference to former laws upon the same subject. The act of March 1797, is plain and express upon this point, by fixing the commissions allowed by that law to moneys received on goods imported after the last day of that month. The 2d section of the act of March 1799, was obviously intended to increase the *4111 e°™sions *°f some collectors, and to vary the relative compensaJ tions which had been allowed to the several collectors, by the former law; but there is no reason to believe, that it was intended to change the objects for which this compensation to the collectors generally was to be allowed. Yet this law does not, in express terms, confine the commissions to duties arising on goods imported after the specified day, as had been done in the preceding act, but is worded, in this respect, precisely like the law immediately under consideration.
 

 It is hardly to be imagined, that over and above the increase of commissions allowed by the last law, for services after the 31st of March, to be wholly rendered, the legislature intended to increase the commissions allowed by the act of 1797, for services which had been in part performed before the
 
 *247
 
 Slst of March 1799, without an expectation of such increase, and where nothing remained to be done but to receive the money. Yet this would be the case, if the increase be not restricted to goods imported after the specified day, The change of expression in the latter law, I take to be perfectly accidental; and, in construing one of them by the other, both being
 
 in pari materia,
 
 I feel myself constrained to read the latter, as if it had been expressed thus :
 
 “
 
 That after the last day of March 1799, there shall be the following commissions allowed on all moneys received by the collectors respectively, op account of duties arising on goods, &c., imported into the United States, after that day,” &c.
 

 The 2d section of the act of 1795 was clearly intended to diminish the compensation of some, and to increase that of other collectors, and can, with as little reason as in the former case, be construed to change the objects for which this compensation was allowed. Such a construction would have the of effect raising the compensation of some collectors, and depressing that of others, for services partly performed at the same time, and in some instances, where those which remained to be done, in order to consummate the right to the commissions, were transferred from the collectors to the banks. This would I think, be unreasonable, *and in the instances of diminished commis- 2 sions, would be unjust. L
 

 That the services performed, preparatory to the collection or receipt of the duties, were considered, by the legislature, as equal, at least, to the receiving of the money, is proved by the 4th section of the law of 1799, which provides, that whenever any collector should die or resign, the commissions to which he would have been entitled on the receipt of all duties by him bonded, shall be equally divided between the collector resigning, or the legal representatives of the deceased collector, and his successor, whose duty it is made to collect the same.
 

 I cannot, therefore, consent to such an interpretation of this law, as to give it a retrospective operation, so as to deprive an officer of a compensation previously allowed by law, for services admitted by the legislature to deserve compensation, and to be in their nature severable, from the ultimate act of the money being received or collected, provided those acts are in reality performed. My opinion is, that the defendant is entitled to three per cent, on all moneys collected and received by him, after the 30th June 1800, on account of bonds previously taken, for duties arising on goods imported into the United States.
 

 Paterson, J.
 

 The basis of this action is the statute of congress of the 10th of May 1800; and the question is, whether the defendant is restricted to a commission of two and a half per cent, on moneys collected and received after the 30th of June 1800, by virtue of revenue bonds, executed previously to that date ? The words of the statute are, “ that in lieu of the commission, heretofore allowed by law, there shall, from and after the 30th of June next, be allowed to the collectors of Alexandria, Petersburg and Richmond, respectively, two and a half per cent, on all moneys which shall be collected and received by them, for and on account of the duties arising on goods, wares and merchandise imported into the United States, and on the ^tonnage of ships and vessels.” The defendant was late collector of the cus- *- toms for the district of Petersburg, in the state of Virginia.
 

 
 *248
 
 Words in a statute ought not to have a retrospective operation, unless they are so clear, strong and imperative, that no other meaning can be an-' nexed to them, or unless the intention of the legislature cannot be otherwise satisfied.
 
 [1]
 
 This rule ought especially to be adhered to, when such a construction will alter the pre-existing situation of parties, or will affect or interfere with their antecedent rights, services and
 
 remuneration;
 
 which is so obviously improper, that nothing ought to uphold and vindicate the interpretation, but the unequivocal and inflexible import of the terms, and the manifest intention of the legislature.
 

 The word “ arising ” refers to the present time, or time to come, but cannot, with any propriety, relate to time past, and embrace former transactions. As to the word “ imported,” it may comprehend the past or future, or both, according to the subject-matter, and the words with which it is associated. Thus the word “ arising,” coupled with the words “ on goods imported,” shows, that the whole clause has a future bearing and aspect, and will not justly admit of a retroactive construction. According to this view of the subject, the commission of two and a half per cent, is to be restricted to moneys received by the collector of Petersburg, on account of the duties arising on goods, wares and merchandise which shall be imported after the 30th of June, when the act went into operation.
 

 To fortify the foregoing construction, it may be added, that the words of a statute, if dubious, ought, in cases of the present kind, to be taken most strongly against the law-makers.
 

 Cushing, J.
 

 The question referred to this court by the circuit court is, whether the defendant, as collector, by the act of the 10th of May 1800, was restricted to a commission of two and a half per cent, on any or all of the moneys collected and received by him, after the 30th June 1800, on account of bonds previously taken for duties arising on goods, wares and merchandise imported into the United States.
 

 There was a prior act of congress, entitling the defendant to three per cent, on all moneys received on account *of duties arising on goods imported into the United States, within his district; which act was in full force during the time those duties arose, and until the subsequent act in question of the 10th of May 1800, was to come into operation, which was the 30th of June following; and the question is upon bonds previously taken for duties arising on goods imported before the 30th of June. Upon this question, I am of opinion, that the collector has a right to the three per cent, allowed by the former law, on all money's secured by bonds previously taken as aforesaid, for duties arising on goods imported before the 30th of June 1800 ; and that he is not restricted by the latter law to two and a half per cent. And that the general and true intent of the latter law was, to make a new allowance in lieu of the former only on- duties arising on goods imported after the last law came into operation, and not to have a retrospective effect, to divest vested rights of the collector; it being unreasonable, in my opinion, to give the law a construction, which would have such a retrospective effect, unless it contained express words to that purpose.
 

 
 *249
 
 Whether the words “from and after the 30th of June,” are in the beginning, middle or end of the sentence, the meaning, in this respect, appears to me the same ; to give the collector a new allowance on goods imported after that time. When the former duties were secured by bond, the laws, I think, consider them, as far as regards the collector’s allowance, as collected and received
 
 ;
 
 the principal services being already done by securing the duties by bond.
 

 Marshall, Oh. J., being one of the judges whose opinions were opposed in the court below, did not sit at this hearing.
 

 [1]
 

 Quoted and approved by Justice Bradley, in Sohn
 
 v.
 
 Waterson,
 
 11
 
 Wall. 598. And see Harvey
 
 v.
 
 Tyler, 2 Id. 347.