[No. S121568. Nov. 4, 2004.]

LESLI ANN McCLUNG, Plaintiff and Appellant, v.
EMPLOYMENT DEVELOPMENT DEPARTMENT et al., Defendants and
Respondents.

## COUNSEL

Law Offices of Guy D. Loranger, Guy D. Loranger; and Shelley Gregory for Plaintiff and Appellant.

Bill Lockyer, Attorney General, James M. Schiavenza, Louis R. Mauro, Barton R. Jenks and Diana L. Cuomo, Deputy Attorneys General, for Defendant and Respondent Employment Development Department.

Matheny Sears Linkert & Long, Michael A. Bishop and Roger Yang for Defendant and Respondent Manuel Lopez.

## OPINION

**CHIN, J.**—"It is, emphatically, the province and duty of the judicial department, to say what the law is. Those who apply the rule to particular cases,

must of necessity expound and interpret that rule." (*Marbury v. Madison* (1803) 5 U.S. 137, 177 [2 L.Ed. 60].)

This basic principle is at issue in this case. In *Carrisales v. Department of Corrections* (1999) 21 Cal.4th 1132 [90 Cal.Rptr.2d 804, 988 P.2d 1083] (*Carrisales*), we interpreted Government Code section 12940 (hereafter section 12940), part of the California Fair Employment and Housing Act (FEHA). Later, the Legislature amended that section by adding language to impose personal liability on persons *Carrisales* had concluded had no personal liability. (§ 12940, subd. (j)(3).) Subdivision (j) also contains a statement that its provisions "are declaratory of existing law . . . ." (§ 12940, subd. (j)(2).) Based on this statement, plaintiff argues that the amendment did not *change*, but merely *clarified*, existing law. Accordingly, she argues, the amendment applies to this case to impose personal liability for earlier actions despite our holding in *Carrisales* that no personal liability attached to those actions.

■ We disagree. Under fundamental principles of separation of powers, the legislative branch of government enacts laws. Subject to constitutional constraints, it may *change* the law. But *interpreting* the law is a judicial function. After the judiciary definitively and finally interprets a statute, as we did in *Carrisales, supra*, 21 Cal.4th 1132, the Legislature may amend the statute to say something different. But if it does so, it *changes* the law; it does not merely state what the law always was. Any statement to the contrary is beyond the Legislature's power. We also conclude this change in the law does not apply retroactively to impose liability for actions not subject to liability when performed.

## I. Facts and Procedural Background

In January 1998, plaintiff Lesli Ann McClung filed a complaint against the Employment Development Department and Manuel Lopez, alleging claims of hostile work environment and failure to remedy a hostile work environment under the FEHA, as well as another cause of action not relevant here. The superior court granted summary judgment for defendants, and plaintiff appealed.

The Court of Appeal affirmed the judgment in favor of the Employment Development Department, but reversed it as to Lopez. In so doing, it held that Lopez was plaintiff's coworker, not supervisor. It also recognized that we had held in *Carrisales, supra*, 21 Cal.4th at page 1140, that the FEHA does not "impose personal liability for harassment on nonsupervisory coworkers." Nevertheless, it found Lopez personally liable for harassment under the FEHA. It applied an amendment to the FEHA that imposes personal liability

on coworkers (§ 12940, subd. (j)(3)), even though the amendment postdated the actions underlying this lawsuit. It found that the preexisting statement in section 12940, subdivision (j)(2), that subdivision (j)'s provisions "are declaratory of existing law," "supports the conclusion that [the amendment] merely clarifies the meaning of the prior statute." Ultimately, it concluded that whether "the amendment merely states the true meaning of the statute or reflects the Legislature's purpose to achieve a retrospective change, the result is the same: we must give effect to the legislative intent that the personal liability amendment apply to all existing cases, including this one." "For Lopez," said the Court of Appeal, "the Supreme Court's interpretation of individual liability under FEHA can be said to have come and gone."

We granted Lopez's petition for review to decide whether section 12940, subdivision (j)(3), applies to this case.

## II. Discussion

### A. *Background*

■ The FEHA "declares certain kinds of discrimination and harassment in the workplace to be 'unlawful employment practice[s].' (§ 12940.)" (*Carrisales, supra,* 21 Cal.4th at p. 1134.) In *Carrisales,* we interpreted the FEHA as imposing "on the *employer* the duty to take all reasonable steps to prevent this harassment from occurring in the first place and to take immediate and appropriate action when it is or should be aware of the conduct," but as not imposing "personal liability for harassment on nonsupervisory coworkers." (*Carrisales, supra,* at p. 1140, citing § 12940, former subd. (h)(1).) Later, effective January 1, 2001, the Legislature amended the subdivision of section 12940 that we interpreted in *Carrisales* (now subdivision (j)). (Stats. 2000, ch. 1049, §§ 7.5, 11.) As amended, section 12940, subdivision (j)(3), provides in relevant part: "An employee of an entity subject to this subdivision is personally liable for any harassment prohibited by this section that is perpetrated by the employee . . . ." It seems clear, and no one disputes, that this provision imposes on nonsupervisory coworkers the personal liability that *Carrisales* said the FEHA had not imposed. Subdivision (j) also states that its provisions "are declaratory of existing law . . . ." (§ 12940, subd. (j)(2).)

We must decide whether the amendment to section 12940 applies to actions that occurred before its enactment. If the amendment merely clarified existing law, no question of retroactivity is presented. "[A] statute that merely *clarifies*, rather than changes, existing law does not operate retrospectively even if applied to transactions predating its enactment" "because the true meaning of the statute remains the same." (*Western Security Bank v. Superior*

*Court* (1997) 15 Cal.4th 232, 243 [62 Cal.Rptr.2d 243, 933 P.2d 507] (*Western Security Bank*).) In that event, personal liability would have existed at the time of the actions, and the amendment would not have changed anything. But if the amendment changed the law and imposed personal liability for earlier actions, the question of retroactivity arises. "A statute has retrospective effect when it substantially changes the legal consequences of past events." (*Ibid.*) In this case, applying the amendment to impose liability that did not otherwise exist would be a retroactive application because it would "attach[] new legal consequences to events completed before its enactment." (*Landgraf v. USI Film Products* (1994) 511 U.S. 244, 270 [128 L.Ed.2d 229, 114 S.Ct. 1483] (*Landgraf*).) Specifically, it would "increase a party's liability for past conduct . . . ." (*Id.* at p. 280; accord, *Myers v. Philip Morris Companies, Inc.* (2002) 28 Cal.4th 828, 839 [123 Cal.Rptr.2d 40, 50 P.3d 751] (*Myers*).)

Accordingly, two separate questions are presented here: (1) Did the amendment extending liability in subdivision (j)(3) change or merely clarify the law? (2) If the amendment did change the law, does the change apply retroactively? We consider the former question first. Because we conclude the amendment did, indeed, change the law, we also consider the latter question.

### B. *Whether the Amendment Changed the Law*

"The powers of state government are legislative, executive, and judicial. Persons charged with the exercise of one power may not exercise either of the others except as permitted by this Constitution." (Cal. Const., art. III, § 3.) "The judicial power of this State is vested in the Supreme Court, courts of appeal, and superior courts, all of which are courts of record." (Cal. Const., art. VI, § 1.) Thus, "The judicial power is conferred upon the courts by the Constitution and, in the absence of a constitutional provision, cannot be exercised by any other body." (*Bodinson Mfg. Co. v. California E. Com.* (1941) 17 Cal.2d 321, 326 [109 P.2d 935].)

■ The legislative power rests with the Legislature. (Cal. Const., art. IV, § 1.) Subject to constitutional constraints, the Legislature may enact legislation. (*Methodist Hosp. of Sacramento v. Saylor* (1971) 5 Cal.3d 685, 691 [97 Cal.Rptr. 1, 488 P.2d 161].) But the judicial branch *interprets* that legislation. "Ultimately, the interpretation of a statute is an exercise of the judicial power the Constitution assigns to the courts." (*Western Security Bank, supra,* 15 Cal.4th at p. 244; see also *People v. Cruz* (1996) 13 Cal.4th 764, 781 [55 Cal.Rptr.2d 117, 919 P.2d 731].) Accordingly, "it is the duty of this court, when . . . a question of law is properly presented, to state the true meaning of the statute finally and conclusively . . . ." (*Bodinson Mfg. Co. v. California E. Com., supra,* 17 Cal.2d at p. 326.)

In *Carrisales, supra,* 21 Cal.4th 1132, we interpreted the FEHA finally and conclusively as not imposing personal liability on a nonsupervisory coworker. This interpretation was binding on lower state courts, including the Court of Appeal. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].) "The decisions of this court are binding upon and must be followed by all the state courts of California. . . . Courts exercising inferior jurisdiction must accept the law declared by courts of superior jurisdiction. It is not their function to attempt to overrule decisions of a higher court." (*Ibid.*)

■ It is true that if the courts have not yet finally and conclusively interpreted a statute and are in the process of doing so, a declaration of a later Legislature as to what an earlier Legislature intended is entitled to consideration. (*Western Security Bank, supra,* 15 Cal.4th at p. 244.) But even then, "a legislative declaration of an existing statute's meaning" is but a factor for a court to consider and "is neither binding nor conclusive in construing the statute." (*Ibid.*; see also *Peralta Community College Dist. v. Fair Employment & Housing Com.* (1990) 52 Cal.3d 40, 52 [276 Cal.Rptr. 114, 801 P.2d 357]; *Del Costello v. State of California* (1982) 135 Cal.App.3d 887, 893, fn. 8 [185 Cal.Rptr. 582].) This is because the "Legislature has no authority to interpret a statute. That is a judicial task. The Legislature may define the meaning of statutory language by a present legislative enactment which, subject to constitutional restraints, it may deem retroactive. But it has no legislative authority simply to say what it *did* mean." (*Del Costello v. State of California, supra,* at p. 893, fn. 8, cited with approval in *People v. Cruz, supra,* 13 Cal.4th at p. 781.) ■ A declaration that a statutory amendment merely clarified the law "cannot be given an obviously absurd effect, and the court cannot accept the Legislative statement that an unmistakable change in the statute is nothing more than a clarification and restatement of its original terms." (*California Emp. etc. Com. v. Payne* (1947) 31 Cal.2d 210, 214 [187 P.2d 702].) Because this court had already finally and definitively interpreted section 12940, the Legislature had no power to decide that the later amendment merely declared existing law.

On another occasion, the Legislature similarly enacted legislation overruling a decision of this court—which was within its power—but also purported to state that the new legislation merely declared what the law always was—which was beyond its power. In *People v. Harvey* (1979) 25 Cal.3d 754 [159 Cal.Rptr. 696, 602 P.2d 396], we interpreted Penal Code section 1170.1 as not permitting a certain consecutive sentence enhancement. The Legislature promptly amended the statute to permit the enhancement. (Stats. 1980, ch. 132, § 2, p. 306.) It also declared that its intent was "to clarify and reemphasize what has been the legislative intent since July 1, 1977." (Stats. 1980, ch. 132, § 1, subd. (c), p. 305.) The judicial response was swift and emphatic. The courts concluded that, although the Legislature may amend a

statute to overrule a judicial decision, doing so *changes* the law; accordingly, they refused to apply the amendment retroactively. (*People v. Savala* (1981) 116 Cal.App.3d 41, 55–61 [171 Cal.Rptr. 882]; *People v. Harvey* (1980) 112 Cal.App.3d 132, 138–139 [169 Cal.Rptr. 153]; *People v. Cuevas* (1980) 111 Cal.App.3d 189, 198–200 [168 Cal.Rptr. 519]; *People v. Vizcarra* (1980) 110 Cal.App.3d 858, 866 [168 Cal.Rptr. 257]; *People v. Fulton* (1980) 109 Cal.App.3d 777, 783 [167 Cal.Rptr. 436]; *People v. Matthews* (1980) 108 Cal.App.3d 793, 796 [167 Cal.Rptr. 8]; see *People v. Wolcott* (1983) 34 Cal.3d 92, 104, fn. 4 [192 Cal.Rptr. 748, 665 P.2d 520].) As one of these decisions explained, this court had "finally and conclusively" interpreted the statute, and a "legislative clarification in the amended statute may not be used to overrule this exercise of the judicial function of statutory construction and interpretation. The amended statute defines the law for the future, but it cannot define the law for the past." (*People v. Cuevas, supra,* at p. 200.)

■ Plaintiff points out that *Carrisales, supra,* 21 Cal.4th 1132, itself postdated the acts alleged in this case and argues that before that decision, nonsupervisory coworkers had been personally liable under the statute. However, "[a] judicial construction of a statute is an authoritative statement of what the statute meant before as well as after the decision of the case giving rise to that construction." (*Rivers v. Roadway Express, Inc.* (1994) 511 U.S. 298, 312–313 [128 L.Ed.2d 274, 114 S.Ct. 1510]; accord, *Plaut v. Spendthrift Farm, Inc.* (1995) 514 U.S. 211, 216 [131 L.Ed.2d 328, 115 S.Ct. 1447].) This is why a judicial decision generally applies retroactively. (*Rivers v. Roadway Express, Inc., supra,* at pp. 311–312; *People v. Guerra* (1984) 37 Cal.3d 385, 399 [208 Cal.Rptr. 162, 690 P.2d 635].) It is true that two administrative decisions had previously interpreted the statute differently than we did. (See *Carrisales, supra,* at pp. 1138–1139.) But we merely concluded that those decisions had misconstrued the statute (*ibid.*); we did not, and could not, amend the statute ourselves. (See *People v. Guerra, supra,* at p. 399, fn. 13.) It is the courts' duty to construe statutes, "even though this requires the overthrow of an earlier erroneous administrative construction." (*Bodinson Mfg. Co. v. California E. Com., supra,* 17 Cal.2d at p. 326; see also *Rivers v. Roadway Express, Inc., supra,* at pp. 312–313 & fn. 12 [explaining that a United States Supreme Court decision interpreting a statute stated what the statute had always meant, even if the decision overruled earlier federal appellate court decisions that had interpreted the statute differently].)

■ Our conclusion that the amendment to section 12940, subdivision (j)(3), changed rather than clarified the law does not itself decide the question whether it applies to this case. It just means that applying the amended section to this case would be a retroactive application. "The fact that application of [the statute] to the instant case would constitute a

retroactive rather than a prospective application of the statute is, of course, just the beginning, rather than the conclusion, of our analysis." (*Evangelatos v. Superior Court* (1988) 44 Cal.3d 1188, 1206 [246 Cal.Rptr. 629, 753 P.2d 585].) We turn now to the question whether the amendment applies retroactively.

### C. *Whether the Amendment Applies Retroactively*

"Generally, statutes operate prospectively only." (*Myers, supra,* 28 Cal.4th at p. 840; see also *Evangelatos v. Superior Court, supra,* 44 Cal.3d at pp. 1206–1208.) "[T]he presumption against retroactive legislation is deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than our Republic. Elementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly . . . . For that reason, the 'principle that the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place has timeless and universal appeal.' " (*Landgraf, supra,* 511 U.S. at p. 265, fns. omitted; see also *Myers, supra,* at pp. 840–841.) "The presumption against statutory retroactivity has consistently been explained by reference to the unfairness of imposing new burdens on persons after the fact." (*Landgraf, supra,* at p. 270.)

This is not to say that a statute may never apply retroactively. "[A] statute's retroactivity is, in the first instance, a policy determination for the Legislature and one to which courts defer absent 'some constitutional objection' to retroactivity." (*Myers, supra,* 28 Cal.4th at p. 841.) But it has long been established that a statute that interferes with antecedent rights will not operate retroactively unless such retroactivity be "the unequivocal and inflexible import of the terms, and the manifest intention of the legislature." (*United States v. Heth* (1806) 7 U.S. 399, 413 [2 L.Ed. 479]; accord, *Myers, supra,* at p. 840.) "[A] statute may be applied retroactively only if it contains express language of retroactivity *or* if other sources provide a clear and unavoidable implication that the Legislature intended retroactive application." (*Myers, supra,* at p. 844.)

We see nothing here to overcome the strong presumption against retroactivity. Plaintiff and Justice Moreno argue that the statement in section 12940, subdivision (j)(2), that the subdivision's provisions merely declared existing law, shows an intent to apply the amendment retroactively. They cite our statement that "where a statute provides that it clarifies or declares existing law, '[i]t is obvious that such a provision is indicative of a legislative intent that the amendment apply to all existing causes of action from the date of its enactment. In accordance with the general rules of statutory construction, we must give effect to this intention unless there is some constitutional objection

thereto.' " (*Western Security Bank, supra,* 15 Cal.4th at p. 244, quoting *California Emp. etc. Com. v. Payne, supra,* 31 Cal.2d at p. 214.)

Neither *Western Security Bank, supra,* 15 Cal.4th 232, nor *California Emp. etc. Com. v. Payne, supra,* 31 Cal.2d 210, holds that an erroneous statement that an amendment merely declares existing law is sufficient to overcome the strong presumption against retroactively applying a statute that responds to a judicial interpretation. In *California Emp. etc. Com. v. Payne,* the amendment at issue does not appear to have been adopted in response to a judicial decision. In *Western Security Bank, supra,* 15 Cal.4th 232, the only judicial action that had interpreted the statute before the Legislature amended it was a Court of Appeal decision that never became final. After considering all of the circumstances, we specifically held that the amendment at issue "did not effect any change in the law, but simply clarified and confirmed the state of the law prior to the Court of Appeal's first opinion. Because the legislative action did not change the legal effect of past actions, [the amendment] does not act retrospectively; it governs this case." (*Id.* at p. 252.) Here, by contrast, as we have explained, *Carrisales, supra,* 21 Cal.4th 1132, was a final and definitive judicial interpretation of the FEHA. The amendment at issue here *did* change the law.

Moreover, the language of section 12940, subdivision (j)(2), namely, that "The provisions of this subdivision are declaratory of existing law," long predates the Legislature's overruling of *Carrisales, supra,* 21 Cal.4th 1132. That language was added to the section in reference to a different, earlier, change to the statute. (Stats. 1987, ch. 605, § 1, p. 1945.) Any inference the Legislature intended the 2000 amendment to apply retroactively is thus far weaker than if the Legislature had asserted, *in the 2000 amending act itself,* that the amendment's provisions declared existing law.

■ Plaintiff and the Court of Appeal also cite statements in the legislative history to the effect that the proposed amendment would only "clarify" the law's original meaning. But these references may have been intended only to demonstrate that clarification was necessary, not as positive assertions that the law always provided for coworker liability. We see no indication the Legislature even thought about giving, much less expressly intended to give, the amendment retroactive effect to the extent the amendment did change the law. Specifically, we see no clear and unavoidable intent to have the statute retroactively impose liability for actions not subject to liability when taken. "Requiring clear intent assures that [the legislative body] itself has affirmatively considered the potential unfairness of retroactive application and determined that it is an acceptable price to pay for the countervailing benefits." (*Landgraf, supra,* 511 U.S. at pp. 272–273.)

Retroactive application would also raise constitutional implications. Both this court and the United States Supreme Court have expressed concerns that

retroactively creating liability for past conduct might violate the Constitution, although it appears neither court has so held. (*Landgraf*, *supra*, 511 U.S. at p. 281 ["Retroactive imposition of punitive damages would raise a serious constitutional question"]; *Myers*, *supra*, 28 Cal.4th at pp. 845–847; but see also *Landgraf*, at p. 272 [describing "the *constitutional* impediments to retroactive civil legislation" as "now modest"].) "An established rule of statutory construction requires us to construe statutes to avoid 'constitutional infirmit[ies].' [Citations.] That rule reinforces our construction of the [statute] as prospective only." (*Myers*, *supra*, at pp. 846–847.) "Before we entertained that [constitutional] question, we would have to be confronted with a statute that explicitly authorized" the imposition of liability "for preenactment conduct." (*Landgraf*, *supra*, at p. 281.) The amendment here contains no such explicit authorization.

■ For all of these reasons, we conclude that section 12940, subdivision (j)(3), does not apply retroactively to conduct predating its enactment.

### III. Conclusion

We reverse the judgment of the Court of Appeal and remand the matter for further proceedings consistent with this opinion.

George, C. J., Kennard, J., Baxter, J., Werdegar, J., and Brown, J., concurred.

**MORENO, J.,** Concurring and Dissenting.—We held in *Carrisales v. Department of Corrections* (1999) 21 Cal.4th 1132 [90 Cal.Rptr.2d 804, 988 P.2d 1083] that the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.) does not impose on nonsupervisory coworkers personal liability for harassment. The Legislature later amended Government Code section 12940, subdivision (j), to impose such personal liability. The statute as amended states that its provisions "are declaratory of existing law." (Gov. Code, § 12940, subd. (j)(2).)[1]

I agree with the majority that the Legislature could not, by amending the statute, clarify its meaning in a manner inconsistent with our decision in *Carrisales*. Thus, the amendment must be deemed to have changed, rather than merely clarified, the law. But unlike the majority, I conclude that by purporting to clarify its original intent, the Legislature clearly intended to apply this statutory change retroactively. We must honor this legislative intent, unless prevented from doing so by constitutional concerns.

The majority correctly recognizes that a statute may apply retroactively. As we stated in *Myers v. Philip Morris Companies, Inc.* (2002) 28 Cal.4th 828,

---

[1] All further statutory references are to the Government Code, unless otherwise specified.

840–841 [123 Cal.Rptr.2d 40, 50 P.3d 751], "[g]enerally, statutes operate prospectively only"; "unless there is an 'express retroactivity provision, a statute will *not* be applied retroactively unless it is *very clear* from extrinsic sources that the Legislature . . . must have intended a retroactive application' [citation] . . . . Under this formulation, a statute's retroactivity is, in the first instance, a policy determination for the Legislature and one to which courts defer absent 'some constitutional objection' to retroactivity. [Citation.]"

The majority, however, "see[s] nothing here to overcome the strong presumption against retroactivity." (Maj. opn., *ante*, at p. 475.) I disagree. The statute at issue, subdivision (j)(2) of section 12940, states that its provisions "are declaratory of existing law . . . ." In *Western Security Bank v. Superior Court* (1997) 15 Cal.4th 232, 244 [62 Cal.Rptr.2d 243, 933 P.2d 507], we recognized the importance of such legislative language: "[E]ven if the court does not accept the Legislature's assurance that an unmistakable change in the law is merely a 'clarification,' the declaration of intent may still effectively reflect the Legislature's purpose to achieve a retrospective change. [Citation.] . . . Thus, where a statute provides that it clarifies or declares existing law, '[i]t is obvious that such a provision is indicative of a legislative intent that the amendment apply to all existing causes of action from the date of its enactment.' "

We made the same point half a century earlier in *California Emp. etc. Com. v. Payne* (1947) 31 Cal.2d 210, 213 [187 P.2d 702], in which the Legislature had amended a statute to add a requirement of an "intent to evade the provisions of this act," further stating that the amendment "is hereby declared to be merely a clarification of the original intention of the legislature rather than a substantive change and such section shall be construed for all purposes as though it had always read as hereinbefore set forth." Despite the Legislature's statement, it was clear that the amendment changed, rather than merely clarified, the law, as no such intent to evade had previously been required. Accordingly, we held that "the language of the 'clarification' provision in this case cannot be given an obviously absurd effect, and the court cannot accept the Legislative statement that an unmistakable change in the statute is nothing more than a clarification and restatement of its original terms." (*Id.* at p. 214.) We recognized, however, that the Legislature's statement indicated a clear intent that the amendment apply retroactively: "It does not follow, however, that the 'clarification' provision . . . is ineffective for any purpose. It is obvious that such a provision is indicative of a legislative intent that the amendment apply to all existing causes of action from the date of its enactment. In accordance with the general rules of statutory construction, we must give effect to this intention unless there is some constitutional objection thereto." (*Ibid.*)

In the present case, as in *Western Security Bank* and *California Emp.*, we cannot give effect to the Legislature's statement that the amendment to section 12940, subdivision (j) was declaratory of existing law, but we can give effect to the Legislature's clear expression of its intent that this amendment be given retroactive effect.

The majority notes that the statutory language stating that the provisions of subdivision (j) of section 12940 are declaratory of existing law was originally added to the statute in reference to a 1987 amendment. The majority concludes from this that "[a]ny inference the Legislature intended the 2000 amendment to apply retroactively is thus far weaker than if the Legislature had asserted, *in the 2000 amending act itself*, that the amendment's provisions declared existing law." (Maj. opn., *ante*, at p. 476.) Again, I do not agree.

A statute that is amended is "re-enacted as amended." (Cal. Const., art. IV, § 9.) "The amendment of a statute ordinarily has the legal effect of reenacting (thus enacting) the statute as amended, including its unamended portions." (*People v. Scott* (1987) 194 Cal.App.3d 550, 554 [239 Cal.Rptr. 588].) As amended, section 12940, subdivision (j) clearly states that its provisions are declaratory of existing law. The circumstance that the same statement had been made in reference to an earlier amendment of the same statute does not lessen the plain meaning of this statutory language. In general, we take it that the Legislature means what it says. In the present case, it is difficult to imagine how the Legislature could have more clearly expressed its intention that the 2000 amendment to subdivision (j) of section 12940, like the earlier amendment, was declaratory of existing law.

Because the Legislature clearly indicated its intent that the amendment to the statute be applied retroactively, we must honor that intent unless there is a constitutional objection to doing so.

The high court addressed the constitutional concerns posed by retroactive application of statutes at some length in *Landgraf v. USI Film Products* (1994) 511 U.S. 244 [128 L.Ed.2d 229, 114 S.Ct. 1483]. The court recognized that "the presumption against retroactive legislation is deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than our Republic. Elementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly; settled expectations should not be lightly disrupted." (*Id.* at p. 265, fn. omitted.) The court noted that "the antiretroactivity principle finds expression in several provisions of our Constitution," including the ex post facto clause, the provision prohibiting the impairment of obligations of contracts, the Fifth Amendment's takings clause, the prohibition of bills of attainder, and the due process clause. (*Id.* at p. 266.)

The court was careful to make clear, however, that these concerns do not necessarily prohibit retroactive application of statutes: "The Constitution's restrictions, of course, are of limited scope. Absent a violation of one of those specific provisions, the potential unfairness of retroactive civil legislation is not a sufficient reason for a court to fail to give a statute its intended scope. Retroactivity provisions often serve entirely benign and legitimate purposes, whether to respond to emergencies, to correct mistakes, to prevent circumvention of a new statute in the interval immediately preceding its passage, or simply to give comprehensive effect to a new law Congress considers salutary. However, a requirement that Congress first make its intention clear helps ensure that Congress itself has determined that the benefits of retroactivity outweigh the potential for disruption or unfairness." (*Landgraf v. USI Film Products*, *supra*, 511 U.S. 244, 267–268, fn. omitted.)

Further, courts must defer to a legislative judgment that a statute should be applied retroactively: "In this century, legislation has come to supply the dominant means of legal ordering, and circumspection has given way to greater deference to legislative judgments." (*Landgraf v. USI Film Products*, *supra*, 511 U.S. 244, 272.) Accordingly, the high court declared, "the constitutional impediments to retroactive civil legislation are now modest." (*Ibid.*, italics omitted.)

Significantly, defendant Lopez does not cite any authority establishing that retroactive application of the amendment to section 12940, subdivision (j) would violate the Constitution. Rather, he simply asserts that "to impose personal liability . . . retroactively should require a 'clear and unavoidable' statement from the Legislature favoring retroactivity . . . ." As explained above, I conclude that the provision stating that the amendment is declaratory of existing law constitutes such a clear statement of intent to apply the amendment retroactively.

Neither does the majority cite any authority establishing that retroactive application of the amendment to section 12940, subdivision (j) would violate the Constitution. Rather, the majority asserts that retroactive application would "raise constitutional implications," while acknowledging that "[b]oth this court and the United States Supreme Court have expressed concerns that retroactively creating liability for past conduct *might* violate the Constitution, *although it appears neither court has so held*. [Citations.]" (Maj. opn., *ante*, at pp. 476–477, italics added.)

I discern no constitutional impediment to giving effect to the Legislature's clear intent to apply the amendment to section 12940, subdivision (j) retroactively. As noted above, the amendment changed the law by imposing upon nonsupervisory coworkers personal liability under the FEHA for harassment, but this did not subject such nonsupervisory coworkers to liability for

harassment for the first time. As we noted in *Carrisales*, "our conclusion [that nonsupervisory coworkers could not be held personally liable under the FEHA] does not necessarily prevent a harasser from being personally liable to the victim under some other statute or theory of tort. All we hold is that the *FEHA* does not cover harassment short of an unlawful employment practice. The FEHA's noncoverage does not immunize anyone, including a coworker, from the consequences of conduct that is otherwise tortious." (*Carrisales v. Department of Corrections, supra*, 21 Cal.4th 1132, 1136.) And we have recognized "that employment discrimination, including sexual harassment . . . can cause emotional distress [and] that such distress is a compensable injury under traditional theories of tort law . . . ." (*Peralta Community College Dist. v. Fair Employment & Housing Com.* (1990) 52 Cal.3d 40, 48 [276 Cal.Rptr. 114, 801 P.2d 357], fn. omitted.)

Given the "modest" constitutional impediments to retroactive civil legislation (*Landgraf v. USI Film Products, supra*, 511 U.S. 244, 272), and the circumstance that harassment by nonsupervisory coworkers was tortious prior to the statutory amendment imposing liability for such conduct under the FEHA, I conclude that there is no constitutional obstacle to the retroactive imposition of personal liability for harassment on nonsupervisory coworkers, as the Legislature intended.