[No. E042695. Fourth Dist., Div. Two. Oct. 22, 2008.]

In re S.J. et al., Persons Coming Under the Juvenile Court Law.
RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES,
Plaintiff and Respondent, v.
C.K., Defendant and Appellant.

### COUNSEL

Robert McLaughlin, under appointment by the Court of Appeal, for Defendant and Appellant.

Joe S. Rank, County Counsel, and Sophia H. Choi, Deputy County Counsel, for Plaintiff and Respondent.

Carl Fabian, under appointment by the Court of Appeal, for Minors.

### OPINION

**HOLLENHORST, J.**—Appellant C.K. (mother) contends that the juvenile court abused its discretion in summarily denying her Welfare and Institutions Code[1] section 388 petition regarding visitation with her daughters, S.J. and D.J. (the children). In a supplemental opening brief, mother argues that the court improperly delegated to the children's legal guardian the power to decide if she could visit the children. We affirm.[2]

## FACTUAL AND PROCEDURAL BACKGROUND

The Riverside County Department of Public Social Services (the department) removed the children from mother's custody on August 21, 1995. At that time, S.J. was two years old and D.J. was one year old. The juvenile court detained them in the foster home of T.T. The court ordered reunification services, but then terminated them on November 11, 1997. The court later granted a section 388 petition and allowed the children to return to mother's home under a family maintenance service plan. However, on March 31, 1999, the department removed the children from mother's care due to her having a psychotic episode that placed them at risk.

---

[1] All further statutory references will be to the Welfare and Institutions Code, unless otherwise noted.

[2] Counsel for the children filed a brief on October 22, 2007, asking this court to affirm the juvenile court's orders.

On January 3, 2000, the court appointed T.T. legal guardian of the children, noting that termination of parental rights would be detrimental to the children because mother had maintained regular visitation, and the children would benefit from continuing the relationship. The court also entered a visitation order that stated: "Visitation between the child[ren] and mother . . . shall be as directed by the legal guardian." The court then terminated the dependency.

On January 9, 2002, mother filed a section 388 petition requesting the court to terminate the legal guardianship and return the children to her. The court denied the petition.

*Section 388 Petitions Regarding the Visitation Order*

On December 29, 2006, mother filed another section 388 petition acting in propria persona, requesting the court to change the visitation order to allow "frequent and liberal" visitation. Mother also wanted the court to order a visitation schedule. As to changed circumstances, mother alleged that she had relocated from Moreno Valley to Blythe in February 2002, and since that time, "unsupervised visitation has been too sporadic." As to the best interests of the children, mother alleged that relationships with her and the paternal grandmother would "significantly affect [the children's] social and economic welfare" and that the children needed to meet their "biologic relatives who [were] School Teachers, Ordained Ministers, Medical students, Nurses, Social Workers, and Successful business owners." The court reviewed the petition and checked the box stating that the best interests of the children "may be promoted by the requested new order." The court set a hearing on the petition for February 15, 2007, but subsequently continued the hearing to March 21, 2007.

On March 2, 2007, mother filed two "updated" section 388 petitions regarding the January 3, 2000, visitation order. In the first "updated" petition that was signed by mother on February 9, 2007, she requested that visitation be frequent and liberal, and she again requested a visitation schedule. She also asked for the children to be returned to her custody, or the custody of the paternal grandmother or maternal aunt, "[u]ntil the legal guardianship can be set aside." As to changed circumstances, mother alleged that she had relocated from Moreno Valley to Blythe and that, since then, "unsupervised visitation has not been frequent or liberal, as per original order." As to best interests, mother alleged: "Relationship with biological relatives will significantly affect their social and economic welfare. Guardianship will dissolve within 3 to 4 years. A modified visitation schedule will allow [the children] to compare the benefits of living with biological relatives, as compared to life in

[a] foster care setting." The petition further alleged that T.T. disagreed with the request and said that the children would only be authorized to visit their biological relatives after custody was granted to mother. The petition further stated that mother had had problems communicating with T.T.

The second "updated" petition, that mother prepared six days later, made the same allegations as the first "updated" petition, and included a letter from T.T. to the children's father (father),[3] explaining why she would not allow mother to take the children to Blythe.

The court reviewed both "updated" petitions on February 16, 2007, and marked the box on the form stating that the matter was set for hearing on March 21, 2007.

### Social Worker's Report and Recommendation

On March 19, 2007, the social worker filed a report stating that mother suffered from mental instability (caused by her bipolar disorder) and that she was last hospitalized one year prior. Mother said she was taking one antidepressant medication and one antipsychotic medication. Mother stated that she could now recognize the signs that she may be going into a manic state and said she would get help. Mother admitted that she was a danger to herself and others when in a manic state.

The social worker interviewed T.T., who said that dealing with mother had taken its toll on her. T.T. said mother exhibited erratic behavior due to her mental illness, including name calling, sending hate mail, intrusive questioning of the children regarding her (T.T.'s) personal matters, and making false allegations to the police. T.T. said that she had never deprived the children of having a relationship with mother, and that she had only stopped them from visiting her four times in 11 years. She stopped the visits twice because the children had planned arrangements and twice because they were being punished for misbehaving. T.T. said mother could have overnight visits with the children provided they remained in Moreno Valley. However, she opposed overnight visits in Blythe. T.T. explained that "if something happens to them it's my responsibility and I don't even know where Blythe is at." She stated that if a court ordered overnight visits, she would comply.

On March 14, 2007, the social worker interviewed S.J., who was 13 years old at that time. S.J. thought it was a waste of time for mother to go back to

---

[3] Father is not a party to this appeal.

the juvenile court and said she was " 'sick of it' " because mother had " 'done this one hundred times.' " When the social worker asked S.J. what she wanted regarding future visits, she replied, " 'That [mother] stop sleeping all the time. That she stop encouraging us to do something that she wants us to do.' " When the social worker asked how she felt about mother possibly wanting her and D.J. to live with her, S.J. said, " 'It's kind of exciting and scary because we can actually get to know her a lot and get to know her better. Also scary because I don't know what kind of house we[']re going to live in.' " When the social worker asked S.J. if she wanted to live with mother, she said, " 'I really like this house. I would love to stay [with] her but living with my mom, I don't know. I mean it's exciting to meet[] new people,' " and " 'I would like to know the other part of my family.' "

The social worker also interviewed D.J., who was 12 years old. When asked what she wanted in terms of her relationship with mother, D.J. said, " 'I want to see [mother] leaving [T.T.] alone. Because [T.T.] is the one who takes care of me. I want to see my mom get better so she won't ruin our lives and I want her to stop the madness because it [is] hurting [T.T.] and when [T.T.] hurts, I hurt. [Mother] needs to know she's hurting my life and needs to know that the world does not revolve around her.' " The social worker asked about telephone contact with mother, and D.J. said she talked to mother once a month, but their conversations were all about what T.T. was doing. D.J. also said she felt left out because mother just wanted to talk to S.J. D.J. felt that mother gave S.J. preferential treatment, which hurt her feelings. The social worker asked her how the visits with mother were, and D.J. said they were never really fun because mother just ran errands that she could not run in Blythe, such as getting makeup and wigs. D.J. said she did not want to live with mother.

The social worker recommended that the court order mother and T.T. to go to mediation to discuss a visitation agreement. Since the relationship between the parties had deteriorated, the social worker felt that a written visitation agreement was needed.

### Section 388 Hearing

On March 21, 2007, the parties appeared before the court. Counsel for the children opposed the recommendation to send the matter to mediation and requested that visits be continued in the manner they had been conducted, due to mother's mental health issues. The children's counsel stated that, although mother had been mentally stable that year, it would be in the best interests of the children that there be no increased visitation. Counsel did not feel the children would be safe with any type of overnight weekend visitation.

Counsel also remarked that T.T. would remain cooperative and ensure that the children had contact with mother.

Mother's counsel then stated that mother was asking the court to order a specific visitation schedule for her.

The court stated that it read the social worker's report and took into "huge consideration" the statements of the children. The court then denied the request to change the visitation order and stated, "Visitation will be conducted in the manner that it has been all along. That will be at the discretion of the legal guardian to arrange those visitations."

## ANALYSIS

### I. The Court Properly Denied Mother's Section 388 Petition(s)

Mother contends that the court abused its discretion in summarily denying her section 388 petition(s). We disagree.

#### A. *The Court Did Not Summarily Deny the Petition(s)*

Contrary to mother's claim, the record shows the court set and held a hearing on her section 388 petitions on March 21, 2007. At the start of the hearing, county counsel clearly stated, "Today is set as a hearing to change [a] court order." The court allowed all the parties to present their arguments, and mother argued for a specific visitation schedule. She did not present any witnesses, but nothing in the record shows that the court prohibited her from doing so. Contrary to mother's claim that the court denied her right to due process by not allowing her to present live testimony or cross-examine witnesses, the record shows that mother failed to present any evidence at the hearing to support her section 388 petitions.

#### B. *Standard of Review*

A juvenile court order may be changed, modified or set aside under section 388 if the petitioner establishes by a preponderance of the evidence that (1) new or changed circumstances exist, and (2) the proposed change would promote the best interest of the child. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 316–317 [27 Cal.Rptr.2d 595, 867 P.2d 706] (*Stephanie M.*).) The parent bears the burden to show both a " 'legitimate change of circumstances' " and that undoing the prior order would be in the best interest of the child. (*In re Kimberly F.* (1997) 56 Cal.App.4th 519, 529 [65 Cal.Rptr.2d 495] (*Kimberly F.*).) The petition is addressed to the sound discretion of the

juvenile court, and its decision will not be overturned on appeal in the absence of a clear abuse of discretion. (*Stephanie M.*, at p. 318.)

### C. *The Court Did Not Abuse Its Discretion*

Mother filed three section 388 petitions, asking the court to modify the visitation order. In the first petition filed on December 29, 2006 (the original petition), as to changed circumstances, mother alleged that she had relocated from Moreno Valley to Blythe in February 2002, and since that time, "unsupervised visitation has been too sporadic." In the two "updated" petitions, as to changed circumstances, mother again alleged that she had relocated from Moreno Valley to Blythe and then alleged that, since then, "unsupervised visitation has not been frequent or liberal, as per original order." Although we recognize that mother's move from Moreno Valley to Blythe was a changed circumstance, we note that mother moved two years after the court made the order, and that she did not file the original 388 petition until nearly *four* years after she moved. We also note that, contrary to her allegation that the original visitation order was for frequent and liberal unsupervised visitation, the January 3, 2000, order that she sought to modify, stated that visitation was to be "as directed by the legal guardian."

■ In any case, "[i]t is not enough for a parent to show *just* a genuine change of circumstances under the statute. The parent must show that the undoing of the prior order would be in the best interests of the child. [Citation.]" (*Kimberly F., supra*, 56 Cal.App.4th at p. 529.) Mother failed to meet her burden. As to best interests, she merely alleged in the original petition that relationships with her and the paternal grandmother would "significantly affect [the children's] social and economic welfare" and that the children needed to meet their relatives, who were allegedly positive role models. In the updated petitions, as to best interests, mother added that "[a] modified visitation schedule will allow [the children] to compare the benefits of living with biological relatives, as compared to life in [a] foster care setting." When given an opportunity to present evidence at the section 388 hearing, mother's counsel merely stated mother's request for the court to set a specific visitation schedule for her to ensure that visitation would regularly occur. Mother was present, but failed to say anything. Mother clearly failed to demonstrate *how* modifying the visitation order would be in the children's best interests. In fact, there was evidence that mother exhibited erratic behavior, such as name calling, sending hate mail, and calling the police with false allegations, that she was hospitalized for mental instability approximately one year before the hearing on the petitions, that she needed to take several medications to stabilize her bipolar disorder, and that she was not in therapy. Furthermore, T.T. agreed that mother's visits were not as consistent as they were when she lived in Moreno Valley; however, there is no

indication that T.T. did not allow mother to have visits. T.T. even allowed mother to have overnight visits with the children, provided they remain close to her in Moreno Valley, in case anything happened. T.T. explained that she did not want mother to take the children for overnight visits in Blythe since she was responsible for them and she did not know where Blythe was. It was reasonable for T.T. to be concerned for the children's safety and well-being while with mother, given mother's mental instability.

Furthermore, the evidence showed that mother did not take advantage of the time she did have with the children. She did not make the visits quality bonding time. S.J. told the social worker that she wished mother would " 'stop sleeping all the time' " during the visits. S.J. further complained that mother did not listen to her and D.J., which " '[got] on [her] nerves a lot.' " S.J. added that she was " 'sick of' " mother going to court regarding her and her sister, and that she thought it was a waste of time. D.J. said that the visits were never really fun because mother ran her personal errands the entire time.

In light of the evidence, we cannot say that the court's decision to deny mother's request for modification was arbitrary or capricious. We accordingly find no abuse of discretion.

## II. Section 366.26, Subdivision (c)(4)(C) Did Not Apply

Mother filed a supplemental opening brief, in which she additionally argues that the court abused its discretion under section 366.26, subdivision (c)(4)(C), in denying her section 388 petitions. She contends that the juvenile court's visitation order improperly delegated to T.T. the power to decide if mother could visit the children. As discussed, *ante*, we conclude that the court properly denied her petitions. Furthermore, section 366.26, subdivision (c)(4)(C), did not apply to the visitation order at issue.

### A. *Former Section 366.26, Subdivision (c)(4)(C)*

At the time the juvenile court made its visitation order in this case, former section 366.26, subdivision (c)(4), provided in relevant part: "If the court finds that adoption of the child or termination of parental rights is not in the best interest of the child . . . the court shall either order that the present caretakers or other appropriate persons shall become legal guardians of the child or order that the child remain in long-term foster care. . . . *The court shall also make an order for visitation with the parents or guardians unless the court finds by a preponderance of the evidence that the visitation would be detrimental to the physical or emotional well-being of the child.*" (Italics added.) The court in *In re Jasmine P.* (2001) 91 Cal.App.4th 617, 621 [110

Cal.Rptr.2d 562] (*Jasmine P.*) reasoned that former section 366.26, subdivision (c)(4), "was only intended to require either an order of visitation or a finding of detriment to the child where a particular circumstance exists." (*Jasmine P.*, at p. 621.) In the court's words: "[W]here the child is left in long-term foster care and *not* in a legal guardianship, *then* the juvenile court shall order visitation with the *parents or guardians* unless the court finds by a preponderance of the evidence that the visitation would be detrimental to the physical or emotional well-being of the child." (*Ibid.*) Thus, *Jasmine P.* essentially concluded that "the juvenile court could delegate to a legal guardian the issue of visitation between parent and child." (*In re S.B.* (2004) 32 Cal.4th 1287, 1294 [13 Cal.Rptr.3d 786, 90 P.3d 746] (*S.B.*); see also *Jasmine P.*, at p. 621.) The Court of Appeal in *In re Randalynne G.* (2002) 97 Cal.App.4th 1156 [118 Cal.Rptr.2d 880] (*Randalynne G.*), disagreed with *Jasmine P.*, and held that the juvenile court in a dependency proceeding may *not* delegate to a minor's legal guardian the issue of visitation between child and parent. (*Randalynne G.*, at p. 1164.) To settle the dispute, the Legislature enacted a statutory amendment to former section 366.26, subdivision (c)(4), that took effect on January 1, 2004. In *S.B.*, the Supreme Court held that, under the amendment, "a juvenile court [was] not precluded from delegating to the appointed guardian the determination whether visitation [was] to occur between the parent and the child." (*S.B., supra*, 32 Cal.4th at p. 1296.) In 2005, the Legislature amended section 366.26, subdivision (c)(4), again. "As a result, in its current incarnation section 366.26, subdivision (c)(4), includes a paragraph that addresses legal guardianship (§ 366.26, subd. (c)(4)(A)), a paragraph that addresses long-term foster care (§ 366.26, subd. (c)(4)(B)), and a new third paragraph that addresses visitation (§ 366.26, subd. (c)(4)(C))." (*In re M.R.* (2005) 132 Cal.App.4th 269, 273–274 [33 Cal.Rptr.3d 629] (*M.R.*).) "By placing the visitation provision in a separate paragraph, the Legislature made clear its intent to require juvenile courts to make visitation orders in both long-term foster care placements and legal guardianships." (*Id.* at p. 274.) Thus, in *M.R.*, a case in which a visitation order similar to the one at issue in the instant case was challenged, this court held that "[b]ecause the trial court was required to make a visitation order unless it found that visitation was not in the children's best interest, it could not delegate authority to the legal guardian to decide whether visitation would occur." (*Ibid.*)

## B. *The Visitation Order at Issue Preceded the Amendment*

We initially note that mother never raised the issue of the applicability of section 366.26, subdivision (c)(4)(C), in any of her section 388 petitions. Instead, *the department* raised the issue *for the first time* in *its* brief. Prompted by the department's response, mother then filed a supplemental

opening brief to argue the issue. We cannot help but comment on the department's gross misreading of mother's opening brief and its senseless response. First, contrary to the department's assertion that mother's principal contention on appeal was that the court improperly delegated the power to determine visitation to the legal guardian, mother never, directly or impliedly, raised this issue in her opening brief. Second, in its brief, the department raised the issue and *conceded* that the court abused its discretion by delegating authority to the legal guardian. Then, in contrast to its own admission, the department contended that it was *permissible* for the court to delegate that authority. The department bewilderingly asserted that, since the court made the implied finding that visitation was detrimental to the children's well-being, it was not required to make a visitation order. It reasoned that "[a]lthough it would be improper for the court to give the legal guardian discretion to determine [mother's] visitations with the minors when a visitation order is required, it is permissible for the court to give the legal guardian discretion when a visitation order is not required to be made at all." The department's position is not only illogical, but also unsupported by the record. The children's counsel recognized the flaws of the department's argument and pointed out that there is no hint in the record that the court found visitation to be detrimental. To the contrary, at the section 366.26 hearing, the court found that the termination of mother's parental rights would be detrimental to the children, since she had maintained regular visitation, and since the children "would benefit from continuing the relationship." Moreover, the court obviously did not find that visitation was detrimental since it then made a visitation order. The department's argument is untenable.

To make matters worse, the department raised the issue of the improper delegation of authority to the legal guardian under section 366.26, subdivision (c)(4)(C), and that provision did not even apply in this case. The court made the visitation order at issue in January 2000, but section 366.26, subdivision (c)(4)(C), did not become effective until January 1, 2005. (*M.R.*, *supra*, 132 Cal.App.4th at pp. 273–274.) *Jasmine P.* held that the juvenile court could delegate to a legal guardian the issue of visitation between parent and child. (*Jasmine P., supra*, 91 Cal.App.4th at p. 621; *S.B., supra*, 32 Cal.4th at p. 1294.) In leaving the determination of visitation between the children and mother to the legal guardian, the juvenile court's order here was in accord with the *Jasmine P.* decision.

Furthermore, although mother filed her section 388 petitions after the amendment was made effective January 1, 2005, she did not rely upon the change in the statute as a basis to modify the visitation order. Even if she had, because the visitation order was made in January 2000, and there was no indication that the Legislature intended the amendment to operate retrospectively, section 366.26, subdivision (c)(4)(C), would not have been applied. A

statute "may be applied retroactively only if it contains express language of retroactivity *or* if other sources provide a clear and unavoidable implication that the Legislature intended retroactive application." (*Myers v. Philip Morris Companies, Inc.* (2002) 28 Cal.4th 828, 844 [123 Cal.Rptr.2d 40, 50 P.3d 751].) Section 366.26, subdivision (c)(4)(C), includes no express declaration of retroactivity with regard to the new subdivision. Mother referred us to no specific, extrinsic source reflecting an intent to have the new subdivision applied retroactively. We conclude that section 366.26, subdivision (c)(4)(C), does not apply retrospectively.

At oral argument, mother argued that section 366.26, subdivision (c)(4)(C), should be applied retroactively since the amendment was simply a clarification of the law, not a modification. We disagree. The amendment in the statute was a change in the existing law. The Supreme Court in *S.B., supra*, 32 Cal.4th 1287, held that, under the 2004 version of the statute, "a juvenile court [was] not precluded from delegating to the appointed guardian the determination whether visitation [was] to occur between the parent and the child." (*Id.* at p. 1296.) In rendering this decision, the Supreme Court performed its duty " 'to state the true meaning of the statute finally and conclusively . . . .' [Citation.]" (*McClung v. Employment Development Dept.* (2004) 34 Cal.4th 467, 472 [20 Cal.Rptr.3d 428, 99 P.3d 1015] (*McClung*).) Because the ruling in *S.B.* constituted "a final and definitive judicial interpretation of" the statute, the Legislature's subsequent amendment of the statute in 2005 constituted a change in the law. (*McClung*, at p. 476.) As this court explained in *M.R.*, with the amendment that became effective January 1, 2005, the Legislature "made clear its intent to require juvenile courts to make visitation orders in both long-term foster care placements and legal guardianships." (*M.R., supra*, 132 Cal.App.4th at p. 274.) Thus, in *M.R.*, this court held that under the 2005 amendment, the juvenile court "could *not* delegate authority to the legal guardian to decide whether visitation would occur." (*Ibid.*, italics added.) Therefore, contrary to mother's contention, section 366.26, subdivision (c)(4)(C), was a modification of the law, not a clarification.

In the alternative, mother contends that the court's March 21, 2007, order denying her section 388 petition was a visitation order itself, to which section 366.26, subdivision (c)(4)(C), applied. Mother is incorrect. The court clearly stated its ruling at the hearing on March 21, 2007: "The request to change the court order with respect to each minor is denied. Visitation will be conducted in the manner that it has been all along." Thus, the court did not make a visitation order at that time. To the contrary, it declined to modify the existing order and simply left the order intact.

## DISPOSITION

The judgment is affirmed.

Ramirez, P. J., and King, J., concurred.